

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00312-CR

THE STATE OF TEXAS                                                STATE

V.

STACIE MICHELLE KERWICK                                           APPELLEE

----------

## FROM COUNTY CRIMINAL COURT NO. 10 OF TARRANT COUNTY

----------

## OPINION

----------

### I. Introduction

In this State's appeal, the primary issue we address is whether the trial court abused its discretion by granting Appellee Stacie Michelle Kerwick's motion to suppress. Based on the standard of review that we are required to apply, we cannot hold that the trial court's ruling was outside the zone of reasonable disagreement. Accordingly, we will affirm the trial court's suppression ruling.

## II. Factual Background

At around 12:19 a.m., Fort Worth Police Officer Jeffrey J. Bradford was dispatched to a bar on North Main Street in Fort Worth in response to a call about several people fighting in front of the bar. When Officer Bradford arrived at the bar, several people were standing outside in front of the bar. Officer Bradford made contact with the person he believed to be the person who had called the police. The person was the owner of a damaged vehicle. That person pointed to a vehicle parked on the street across from the bar and said, "There they are right there. There they are, there they are." Officer Bradford walked over to the vehicle as it started moving northbound on the street and stopped the vehicle by yelling at the driver, ordering her to stop. Officer Bradford testified that he "believed that they—at that point they were involved in an offense."

Appellee was charged with driving while intoxicated. She filed a motion to suppress. At the suppression hearing, Officer Bradford was the only witness to testify, and no exhibits were admitted into evidence. The State's entire questioning of Officer Bradford concerning his initial investigatory detention of Appellee—after predicatory questions establishing Officer Bradford's employment history and that he was dispatched to the bar at 12:19 a.m.—was as follows:

Q. And why were you dispatched there?

A. In reference to a fight.

Q. And did you respond to that?

2

A.  I did.

Q.  What did you know about that fight before you got to that location?

A.  The details stated several people were fighting out front in front of the bar.

Q.  And when you got there did you see several people outside?

A.  Yeah.  There were several.

Q.  And did you make contact with anyone?

A.  Yes, the—I believe it was the person who called the police. There was a vehicle that was damaged there.  He was the owner of the vehicle that was damaged.

Q.  Okay.  And did you see the damaged vehicle there?

A.  I did.

Q.  And did you speak to that person?

A.  Yes.

Q.  And do you know who that person was?

A.  I have it written down here.

Q.  So you—you do have it written down?

A.  Yes.

Q.  So that person was identified to you?

A.  Right.

Q.  And what did—what did that person say to you?

3

A.  He pointed at a vehicle, which was parked across the street and pointed at it and said, "There they are right there.  There they are, there they are."

Q.  When you say across the street, where was that vehicle parked?

A.  Directly across from the [] bar on the east side of the roadway, facing northbound.

Q.  Okay.  And so is this—is this in the Stockyards?

A.  It is.

Q.  And is that—was that car parked in the street or in the parking lot?

A.  It was in the street.

         . . . .

Q.  Okay.  So the witness said, "There they are," and what did you do?

A.  I—I was on foot at this point.  I walked over to the vehicle as it started moving northbound.  At that point I stopped it.

Q.  How did you stop it?

A.  Ordered the driver to stop the vehicle.  I yelled at her.

Q.  Why did you do that?

A.  Because I believed that they—at that point they were involved in an offense.

Q.  And which offense do you believe they were involved in?

A.  An assault, criminal mischief, or both.

4

The trial court granted Appellee's motion to suppress and, upon request by the State, issued findings of fact and conclusions of law.[1]

## III. Standard of Review

In review of a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, Nos. PD-1238-10, PD-1239-10, 2011 WL 2555712, at *2 (Tex. Crim. App. June 29, 2011). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. We apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness and applying a de novo standard of review to pure

---

[1]The trial court's findings of fact and conclusions of law are attached to this opinion.

questions of law and mixed questions that do not depend on credibility determinations. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

## IV. Reasonable Suspicion for an Investigative Detention

### A. The Law

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id*. Once the defendant has made this showing, the burden of proof shifts to the State, which is required to establish that the seizure was conducted pursuant to a warrant or was reasonable. *Id*.

A temporary or investigative detention is a seizure. *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); *Josey v. State*, 981 S.W.2d 831, 838 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). An investigative detention occurs when an individual is encountered by a police officer, yields to the officer's display of authority, and is temporarily detained for purposes of an investigation. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Because an investigative detention is a seizure, reasonable suspicion must be shown by the

6

officer to justify the seizure. *State v. Larue*, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000).

An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. "'[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)). The articulable facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez*, 2011 WL 2555712, at *2. Articulable facts must amount to more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).

In deciding whether reasonable suspicion existed, we look at the facts available to the officer at the time of the detention. *Id*. Whether the officer's suspicion to believe that an individual is violating the law is reasonable is evaluated based on "an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492. We are to take into account the totality of the circumstances in order to determine whether reasonable suspicion existed for the stop. *Martinez*, 2011 WL 2555712, at *2.

7

The totality of the circumstances includes both the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990); *Martinez*, 2011 WL 2555712, at *2; *Blevins v. State*, 74 S.W.3d 125, 130–31 (Tex. App.—Fort Worth 2002, pet. ref'd). In determining whether information possessed by police rises to the level of reasonable suspicion, the quality of the information possessed is weighed against the quantity of information possessed. *See Rojas v. State*, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990) (balancing quality of information against quantity of information in the probable cause context); *Blevins*, 74 S.W.3d at 130. That is, a weakness in the quality of the information possessed may be overcome by the requisite quantity of corroborating facts demonstrating the reliability of the information. *See Smith v. State*, 58 S.W.3d 784, 790 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (balancing quality of information against quantity of information in the investigative stop context). Conversely, when the reliability of the information is increased, less corroboration is necessary. *See Martinez,* 2011 WL 2555712, at *2; *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd).

## B. Application of the Law to the Present Facts

The State raises six points in this appeal; each point alleges that the trial court erred by granting Appellee's motion to suppress.[2] The State argues the six points together in its brief, and we likewise address them together in this opinion.

The State stipulated that Officer Bradford's investigative detention of Appellee was made without a warrant. Thus, the burden of proof shifted to the State to produce evidence that Officer Bradford's seizure of Appellee was reasonable; that is, that Officer Bradford possessed reasonable suspicion to believe that Appellee was violating the law. *See Ford*, 158 S.W.3d at 492. Officer Bradford was the only witness to testify at the suppression hearing, and no exhibits were admitted into evidence, so we examine Officer Bradford's testimony to determine whether the State elicited from him specific and articulable facts that reasonably warranted his investigative detention of Appellee. *See id.; Davis*, 947 S.W.2d at 242. In doing so, we give almost total deference to the trial court's determination of historic facts and mixed questions

---

[2]The State's points allege that the trial court erred by granting Appellee's motion to suppress because (1) the trial court erroneously determined that Officer Bradford did not possess reasonable suspicion for an investigative stop; (2) the trial court's ruling runs afoul of *Terry v. Ohio*; (3) the trial court's ruling runs afoul of Texas Court of Criminal Appeals's case law, including *Derichsweiler v. State*; (4) the trial court's ruling violates the Fourth Amendment; (5) the trial court's ruling violates article I, section 9 of the Texas constitution; and (6) the trial court's ruling was erroneous because Officer Bradford's decision to stop Appellee was objectively reasonable based on the totality of the circumstances.

of law and fact that rely upon Officer Bradford's credibility. *See Martinez*, 2011 WL 2555712, at *2.

The facts known to Officer Bradford when he initiated the warrantless seizure of Appellee—at least the facts that are set forth in the record before us— were that (1) someone had called the police to report people fighting in front of a bar on the north side of Fort Worth; (2) Officer Bradford was dispatched to the scene at 12:19 a.m.; (3) people were standing in front of the bar when he arrived; (4) he spoke to a person whom he believed was the person who had called the police; (5) that person had a damaged vehicle; and (6) that person pointed to a vehicle parked on the street across from the bar and said, "There they are right there. There they are, there they are." As the vehicle was driving away, Officer Bradford initiated a temporary investigative detention by yelling at the driver, Appellee, and ordering her to stop.

The State points out that the person whom Officer Bradford believed had called the police remained at the scene and spoke to Officer Bradford in a face-to-face encounter and argues that the totality of the circumstances are sufficient to support Officer Bradford's suspicion that he "believed that they [the people in the vehicle] -- at that point they were involved in an offense. . . . An assault, criminal mischief, or both." The record before us, however, does not indicate what, if anything, Officer Bradford said to the person before the person said, "There they are right there. There they are, there they are." The record does not indicate what, if anything, the person said to Officer Bradford before the person

said, "There they are right there. There they are, there they are." In fact, the record does not establish that the person who said, "There they are right there. There they are, there they are," was the person who called the police. In finding of fact number 4, the trial court found only that "Officer Bradford made contact with an unidentified person who Officer Bradford *believed* was the individual who called the police." [Emphasis added.] Thus, the trial court found only that Officer Bradford *believed* this was the individual who called the police, not that it was in fact the person who had called the police. Officer Bradford never testified concerning the name of the person at the scene or the name of the person who had called the police.

The record before us does not indicate when Officer Bradford arrived at the bar. He was dispatched at 12:19 a.m., but the record does not indicate whether he arrived ten minutes after he was dispatched or one hour after he was dispatched. The record does not indicate how Officer Bradford determined that the person who said, "There they are right there. There they are, there they are," was the owner of a damaged vehicle. The record does not indicate whether the person's vehicle was already damaged when the person arrived at the bar, was damaged at the bar, was damaged during the fighting, or was in an accident at or near the bar before Officer Bradford arrived at the bar. Thus, in finding of fact number 11, the trial court found that Officer Bradford "*believed* that the occupants of the vehicle were involved in either an assault, criminal mischief, or both." [Emphasis added.]

11

In short, the record before us simply contains no facts to enable either the trial court or this court to objectively evaluate either Officer Bradford's *belief* that the person who said, "There they are right there. There they are, there they are," was the person who had called the police or his *belief* that Appellee was "involved in an offense. . . [—a]n assault, criminal mischief, or both." No facts exist in the record to enable the trial court or this court to assess whether either of these beliefs by Officer Bradford were objectively reasonable. *See Ford*, 158 S.W.3d at 493. Without specific, articulable facts, a court has no means of assessing whether an officer's opinion is objectively reasonable. *Id*. Without specific, articuable facts, a detention cannot be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular seizure in light of the particular circumstances. *Id*. And when such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. *Id*. Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion protection. *Id*.

The State nonetheless argues that because the person that Officer Bradford believed had called the police remained at the scene and spoke to Officer Bradford in a face-to-face encounter, Officer Bradford's beliefs were reasonable. As set forth above, no facts exist *in the record*—as opposed to possibly in Officer Bradford's mind—to substantiate Officer Bradford's belief that this person was the person who had called the police. Assuming, however, enhanced reliability of the statement, "There they are right there. There they are,

12

there they are," based on the fact that the statement was made face-to-face between a bystander and Officer Bradford, the substance of the information provided—at least as elicited from Officer Bradford in the record before us—does not indicate any unusual activity, does not connect Appellee to any unusual activity, and does not indicate that any unusual activity is related to crime. *See Martinez*, 2011 WL 2555712, at \*2; *accord Derichsweiler v. State*, No. PD-0176-10, 2011 WL 255299, at \*6 (Tex. Crim. App. Jan. 26) (holding witnesses' statements to officer indicated unusual activity, connected Derichsweiler to the unusual activity, and related to future criminal activity), *cert. denied*, 2011 WL 4530673 (2011).[3] The trial court therefore concluded:

> The vague statement 'there they are' made by an unidentified person did not provide Officer Bradford with any specific articulable facts to form reasonable suspicion that some activity out of the ordinary was occurring, or had occurred, or that the detainee had a

[3]In *Derichsweiler*, the court of criminal appeals held that the witnesses' call to police and face-to-face recitation to police at the scene that around 8 p.m., a man had driven by them twice while they were in a McDonald's drive-through lane, was "looking straight at [them]," "kind of grinning," "for between thirty seconds to a minute," had driven into the adjacent Wal-Mart parking lot, and was engaging in similar behavior there constituted "specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the appellant was committing or soon would be engaged in some type of criminal activity." 2011 WL 255299, at \*1, \*5. Thus, in *Derichsweiler*, witnesses reported to the police the behavior that they had personally observed the defendant engage in. *See id.* at \*1. Here, the person at the scene either did not report to Officer Bradford what conduct he had observed Appellee engage in, or the State simply failed to elicit this testimony from him. Either way, this case is distinguishable from *Derichsweiler* because, unlike the record in *Derichsweiler*, the record in this case contains no testimony by Officer Bradford as to what conduct, if any, the person at the scene supposedly observed Appellee engage in.

connection with the unusual activity. "There they are" does not identify who "they" are, nor what crime, if any, "they" had committed.

Deferring as we must to the historical facts found by the trial court and mixed questions of law and fact that rely upon the credibility of Officer Bradford, and applying a de novo standard of review to the pure questions of law presented and to the mixed questions not depending on Officer Bradford's credibility, we cannot hold that the trial court acted outside the zone of reasonable disagreement in granting Appellee's motion to suppress. *See Martinez*, 2011 WL 2555712, at *2. The State failed to meet its burden at the suppression hearing to adduce facts proving under an objective standard, disregarding any subjective intent of Officer Bradford, that Officer Bradford's suspicion or belief that Appellee was violating the law was reasonable. *See Ford*, 158 S.W.3d at 493. Consequently, the trial court's suppression ruling comports with the requisites of *Terry v. Ohio*, the Fourth Amendment, and article I, section 9 of the Texas constitution. We overrule the State's six points.

## V.  Conclusion

Having overruled the State's points, we affirm the trial court's order granting Appellee's motion to suppress.

SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

MCCOY, J. concurs without opinion.

PUBLISH

DELIVERED:  November 3, 2011

COPY

No. 1169199

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
| | § | |
| vs. | § | COURT NUMBER TEN OF |
| | § | |
| STACIE MICHELLE KERWICK | § | TARRANT COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1. At approximately 12:19 a.m. on the morning of August 14, 2009, Officer Bradford was dispatched to 2411 North Main (PR's Bar) in response to a fight. (R.R. at 6)

2. According to the dispatch, several people were fighting in front of the bar. (R.R. at 7)

3. Upon arrival, Officer Bradford observed several people standing outside the bar. (R.R. at 7)

4. Officer Bradford made contact with an unidentified person who Officer Bradford believed was the individual who called the police. (R.R. at 7)

5. Officer Bradford testified as having the name of the unidentified person written down, however, it was never offered as testimony. (R.R. at 7)

6. The unidentified person that Officer Bradford spoke to was the owner of a damaged vehicle. (R.R. at 7)

7. Officer Bradford's testimony did not reveal the cause of the damage to the vehicle nor where the damaged vehicle was located. (R.R. at 7)

8. The unidentified person pointed at a vehicle that was parked across the street and said, "there they are right there. There they are, there they are." (R.R. at 7, 8)

000003

9. According to Officer Bradford, the vehicle that the unidentified person pointed to was parked across the street from the bar. (R.R. at 8)

10. Officer Bradford then proceeded on foot across the street toward the vehicle. (R.R. at 8, 9)

11. The vehicle began to move, and Officer Bradford ordered the driver to stop the vehicle because he believed the occupants of the vehicle were involved in either an assault, criminal mischief, or both. (R.R. at 8, 9)

12. Prior to making the stop Officer Bradford did not know how many people there might be in the vehicle nor how many people in the vehicle might have been involved in an assault or criminal mischief. (R.R. at 9)

13. Officer Bradford made contact with the driver, Ms. Kerwick. (R.R. at 9)

14. Officer Bradford smelled a strong odor of alcohol coming from inside the car. (R.R. at 10)

15. Officer Bradford observed the driver's bloodshot and watery eyes. (R.R. at 10)

16. Officer Bradford has been employed by the Fort Worth Police Department since 2000. (R.R. at 5, 6)

## CONCLUSIONS OF LAW

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art 1, § 9. Nevertheless, circumstances short of probable cause may justify a temporary detention for purposes of investigation. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). To justify an investigative detention, the officer must have specific articulable facts, which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts would warrant the intrusion on the detainee. *Id.* at 21. These facts must amount to more than a mere hunch or suspicion. *Id.* at 22. The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring

000004

or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime.

The only information that Officer Bradford had to rely upon before making the stop was the dispatch, which stated that there was a fight among several people outside the bar and the vague statement "there they are" made by an unidentified person outside the bar. The vague statement "there they are" made by an unidentified person did not provide Officer Bradford with any specific articulable facts to form reasonable suspicion that some activity out of the ordinary was occurring, or had occurred, or that the detainee had a connection with the unusual activity. "There they are" does not identify who "they" are, nor what crime, if any, "they" had committed.

Prior to making the stop, Officer Bradford did not know what offense had been committed, nor did Officer Bradford know who, if any, among the vehicle occupants were involved in an offense.

Based on the evidence and the credibility of the witness, the court finds that Officer Bradford improperly stopped the vehicle because he lacked sufficient articulable facts to justify reasonable suspicion.

_Judge Phil Sorrells signature_

Judge Phil Sorrells

000005