

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1837-11

---

### THE STATE OF TEXAS

### v.

### STACIE MICHELLE KERWICK, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

---

**JOHNSON, J., filed a dissenting opinion, in which COCHRAN and ALCALÁ, JJ., joined.**

### DISSENTING OPINION

The entire record of testimony in this suppression hearing covers less than 5 pages–113 lines–including identification of the single witness, objections, and rulings from the court. Even if one believes, as the trial court did and as I do, that Officer Bradford testified truthfully, the record simply does not contain enough information to establish reasonable suspicion. The court was the finder of fact and, it seems to me, every bit of the testimony depended on the credibility and demeanor of the single witness, Officer Bradford. We are thus required to give almost total deference to the trial judge's determinations of historical facts and mixed questions of law and fact

that rely on credibility and demeanor when supported by the record.  *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Below, I set out the sixteen findings of fact, the record testimony in regard to that finding, and my comments about what the testimony contributes toward establishing probable cause.

Finding of Fact (FF)  # 16
16.  Officer Bradford has been employed by the Fort Worth Police Department since 2000. (R.R. at 5, 6)

Q       How long have you been with the police department?
A       Since 2000.

FF # 1
1.  At approximately 12:19 a.m. on the morning of August 14, 2009, Officer Bradford was dispatched to 2411 North Main (PR's Bar) in response to a fight. (R.R. at 6)

Q       Were you working on August 14th, 2009?
A       I was.
. . .
Q       Around 12:19 -- I'm talking about 12:19 a.m., were you dispatched anywhere?
A       I was.
Q       And where to?
A       To 2411 North Main, PR's.
Q       And why were you dispatched there?
A       In reference to a fight.

Officer Bradford was dispatched at 12:19 a.m, but we do not know when the call was received or when Officer Bradford arrived at the bar.  Was it soon enough that most of the people present at the time of the call are still present at the scene?

FF # 2
2.  According to the dispatch, several people were fighting in front of the bar. (R.R. at 7)

Q       What did you know about that fight before you got to that location?
A       The details stated several people fighting out front in front of the bar.

FF # 3

3. Upon arrival, Officer Bradford observed several people standing outside the bar. (R.R. at 7)

FF # 4

4. Officer Bradford made contact with an unidentified person who Officer Bradford believed was the individual who called the police. (R.R. at 7)

Q    And did you make contact with anyone?
A    Yes, the -- I believe it was the person who called the police.

The person he spoke to is identified only by gender–"he." That person was at a bar after midnight, and we have essentially no information about him. No physical description was given. Why did Officer Bradford believe that this person was the one who called the police? Was he intoxicated or sober? Did he provide any verification of his identity, such as a driver's license or other state-issued identification so that we know that he did not use a false name? Did his body show any indication that he might have been involved in the fight?

FF # 6

6. The unidentified person that Officer Bradford spoke to was the owner of a damaged vehicle. (R.R. at 7)

FF # 7

7. Officer Bradford's testimony did not reveal the cause of the damage to the vehicle nor where the damaged vehicle was located. (R.R. at 7)

[A] . . . There was a vehicle that was damaged there. He was the owner of the vehicle that was damaged.
Q    Okay. And did you see the damaged vehicle there?
A    I did.

Did Officer Bradford verify ownership? There is no description of the damaged car or the asserted damage. Did the damage appear recent or was it showing rust? If he was calling the police about car damage, why did he report a fight? A call reporting a fight is likely to attract a police presence more quickly than a report of damage to a car in a bar parking lot because fights sometimes turn into assaults or murders.

FF # 5

5. Officer Bradford testified as having the name of the unidentified person written down, however, it was never offered as testimony. (R.R. at 7)

Q      And did you speak to that person?
A      Yes.
Q      And do you know who that person was?
A      I have it written down here.
Q      So that person was identified to you?
A      Right.

But not identified to the trial court. He testified that he had the name of the person written down "here," yet we have no name in the record, no way to discover whether the person was a solid citizen or a convicted thief and liar. And we have no testimony from this person about the events at the bar before Officer Bradford arrived that could have provided facts that firmly support a finding of reasonable suspicion.

FF # 8

8. The unidentified person pointed at a vehicle that was parked across the street and said, "there they are right there. There they are, there they are." (R.R. at 7, 8)

Q      And what did -- what did that person say to you?
A      He pointed at a vehicle, which was parked across the street and pointed at it and said, "There they are right there. There they are, there they are."

FF # 9

9. According to Officer Bradford, the vehicle that the unidentified person pointed to was parked across the street from the bar. (R.R. at 8)

Q      When you say across the street, where was that vehicle parked?
A      Directly across from the PR's bar on the east side of the roadway, facing northbound.

The car was parked across the street. How far away was "across the street"? What was the lighting like? Were the faces of the people in the car visible and identifiable? What did the person believe that "they" had done? How did he know that "they" were the right "they"? Did he know appellee? If so, did he have any reason to falsely accuse?

FF # 10

10. Officer Bradford then proceeded on foot across the street toward the vehicle. (R.R. at 8, 9)

FF # 11

11. The vehicle began to move, and Officer Bradford ordered the driver to stop the vehicle because he believed the occupants of the vehicle were involved in either an assault, criminal mischief, or both. (R.R. at 8, 9)

Q     (BY [prosecutor]) Okay. So the witness said, "There they are," and what did you do?
A     I -- I was on foot at this point. I walked over to the vehicle as it started moving northbound. At that point I stopped it.
Q     How did you stop it?
A     Ordered the driver to stop the vehicle. I yelled at her.
Q     Why did you do that?
A     Because I believed that they -- at that point they were involved in an offense.
Q     And which offense do you believe they were involved in?
A     An assault, criminal mischief, or both.

According to the testimony in the record, at the time Officer Bradford stopped appellee's car, no one at the scene had alleged that "they" had any involvement in the reported, but unverified, fight or in causing damage to a car. In the record, there is not even verification that there had, in fact, been a fight–no injuries were shown to Officer Bradford–and no other witnesses, such as bouncers, were identified or questioned. A bare statement that "there they are" does not allege wrongdoing of any kind.

FF # 12

12. Prior to making the stop Officer Bradford did not know how many people there might be in the vehicle nor how many people in the vehicle might have been involved in an assault or criminal mischief. (R.R. at 9)

Q     Were there passengers in that car, too?
A     There was. There was one.
Q     Before you made the stop did you know how many passengers there might be?
A     No.
Q     Did you know how many people in that car might have been involved in the assault --
A     No, I didn't.
Q     -- or the criminal mischief?

There was no evidence in the record that there had actually been an assault or a criminal mischief, only hearsay statements from an unidentified person who the officer believed, but apparently did not know, had made the call to police about a fight and who had apparently alleged recent damage to a car.

> FF # 13
> 13. Officer Bradford made contact with the driver, Ms. Kerwick. (R.R. at 9)
>
> [Q]    What did you do after you stopped and made contact with the Defendant?
> A      I spoke with the driver.
> Q      And what did you notice, anything about the driver?
>
> FF # 14
> 14. Officer Bradford smelled a strong odor of alcohol coming from inside the car. (R.R. at l0)
> FF # 15
> 15. Officer Bradford observed the driver's bloodshot and watery eyes. (R.R. at 10)
>
> A      Well, I could smell a very strong odor of alcohol coming from inside the car. As far as the driver goes, bloodshot, watery eyes and just the odor of alcohol was pretty strong.

The officer's observations gave him probable cause as to driving while intoxicated, but the issue here is not probable cause as to driving while intoxicated, but reasonable suspicion to stop appellee as she began to leave the bar area. Based on the record, we cannot even deduce that she had been in the bar, only that she was in the area.

Immediately after the response noted in FF #15, the hearing concluded.

> MR. LUSTER: Pass the witness.
> MR. SHAW: No questions.
> MR. LUSTER: State rests.
> MR. SHAW: We rest.

As the majority notes, whether the facts known to the officer at the time of detention amount to reasonable suspicion is a mixed question of law and fact and, if the mixed question does not

depend on an evaluation of credibility, it is viewed *de novo* by an appellate court. Clearly, the trial court's findings of fact are supported by the record. Equally clearly, the trial court credited Officer Bradford's testimony. Both the trial court and the court of appeals ruled that the testimony presented to the trial court at the suppression hearing did not provide sufficient evidence to support a finding of reasonable suspicion.

As the trial court set out in its conclusions of law,

> To justify an investigative detention, the officer must have specific articulable facts, which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts would warrant the intrusion on the detainee. These facts must amount to more than a mere hunch or suspicion. The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime.
>
> The only information that Officer Bradford had to rely upon before making the stop was the dispatch, which stated that there was a fight among several people outside the bar and the vague statement "there they are" made by an unidentified person outside the bar. The vague statement "there they are" made by an unidentified person did not provide Officer Bradford with any specific articulable facts to form reasonable suspicion that some activity out of the ordinary was occurring, or had occurred, or that the detainee had a connection with the unusual activity. "There they are" does not identify who "they" are, nor what crime, if any, "they" had committed.
>
> Prior to making the stop, Officer Bradford did not know what offense had been committed, nor did Officer Bradford know who, if any, among the vehicle occupants were involved in an offense.
>
> Based on the evidence and the credibility of the witness, the court finds that Officer Bradford improperly stopped the vehicle because he lacked sufficient articulable facts to justify reasonable suspicion. (Citations omitted.)

The court of appeals agreed. After raising many of the questions I have raised, the court of appeals wrote,

> In short, the record before us simply contains no facts to enable either the trial court or this court to objectively evaluate either Officer Bradford's *belief* that the person who said, "There they are right there. There they are, there they are," was the person who had called the police or his *belief* that Appellee was "involved in an

offense . . . [–a]n assault, criminal mischief, or both." No facts exist in the record to enable the trial court or this court to assess whether either of these beliefs by Officer Bradford were objectively reasonable. Without specific, articulable facts, a court has no means of assessing whether an officer's opinion is objectively reasonable. Without specific, articulable facts, a detention cannot be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular seizure in light of the particular circumstances. And when such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion protection.

. . .

Deferring as we must to the historical facts found by the trial court and mixed questions of law and fact that rely upon the credibility of Officer Bradford, and applying a de novo standard of review to the pure questions of law presented and to the mixed questions not depending on Officer Bradford's credibility, we cannot hold that the trial court acted outside the zone of reasonable disagreement in granting Appellee's motion to suppress. The State failed to meet its burden at the suppression hearing to adduce facts proving under an objective standard, disregarding any subjective intent of Officer Bradford, that Officer Bradford's suspicion or belief that Appellee was violating the law was reasonable. Consequently, the trial court's suppression ruling comports with the requisites of *Terry v. Ohio*, the Fourth Amendment, and article I, section 9 of the Texas constitution.

*State v. Kerwick,* 353 S.W.3d 911, 917, 918 (Tex. App.–Fort Worth 2011). (Emphasis in original, citations omitted.)

Both the trial court and the appellate court applied the correct standards of review and proper analysis, and based on the skimpy record that was before them and is now before us, correctly determined that the record is unable to support a finding of reasonable suspicion. Even if one believes, as the trial court did and as I do, that Officer Bradford testified truthfully, the state did not carry its burden of justifying a detention and warrantless arrest. Because it did not, I would affirm the suppression ruling of the trial court and the judgment of the court of appeals.

I respectfully dissent.

Filed: February 27, 2013
Publish