

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1837-11

### STATE OF TEXAS

### v.

### STACIE MICHELLE KERWICK, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., PRICE, WOMACK, and HERVEY, JJ., joined. JOHNSON, J., filed an dissenting opinion, in which COCHRAN, and ALCALA, JJ., joined. MEYERS, J., dissented.

### O P I N I O N

In a motion to suppress evidence, Stacie Kerwick asserted that the officer who detained her lacked reasonable suspicion to conduct the investigatory detention which led to her arrest for driving while intoxicated. The trial judge granted Kerwick's motion and the court of appeals affirmed the ruling. We hold that Kerwick's detention was supported by reasonable suspicion and reverse the court of appeals's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

At the brief pre-trial suppression hearing, Fort Worth Police Officer Bradford, testified to the circumstances surrounding his investigative detention of Kerwick. The trial judge's findings of fact and conclusions of law contained nearly all of Officer Bradford's testimony and stated the following:

1. At approximately 12:19 a.m. on the morning of August 14, 2009, Officer Bradford was dispatched to 2411 North Main (PR's Bar) in response to a fight.

2. According to the dispatch, several people were fighting in front of the bar.

3. Upon arrival, Officer Bradford observed several people standing outside the bar.

4. Officer Bradford made contact with an unidentified person who Officer Bradford believed was the individual who called the police.

5. Officer Bradford testified as having the name of the unidentified person written down, however, it was never offered as testimony.

6. The unidentified person that Officer Bradford spoke to was the owner of a damaged vehicle.

7. Officer Bradford's testimony did not reveal the cause of the damage to the vehicle nor where the damaged vehicle was located.

8. The unidentified person pointed at a vehicle that was parked across the street and said "there they are right there. There they are, there they are."

9. According to Officer Bradford, the vehicle that the unidentified person pointed to was parked across the street from the bar.

10. Officer Bradford then proceeded on foot across the street toward the vehicle.

11. The vehicle began to move, and Officer Bradford ordered the driver to stop the vehicle because he believed the occupants of the vehicle were involved in either an assault, criminal mischief, or both.

12. Prior to making the stop Officer Bradford did not know how many people there might be in the vehicle nor how many people in the vehicle might have been involved in an assault or criminal mischief.

13. Officer Bradford made contact with the driver, Ms. Kerwick.

14. Officer Bradford smelled a strong odor of alcohol coming from inside the car.

15. Officer Bradford observed the driver's bloodshot and watery eyes.

16. Officer Bradford has been employed by the Forth Worth Police Department since 2000.[1]

The trial judge concluded that Officer Bradford improperly stopped Kerwick's vehicle because the only information Officer Bradford possessed was the information from dispatch that several people were fighting and the "there they are" statement, which was vague and made by an unidentified person. In the trial judge's opinion, Officer Bradford did not possess specific, articulable facts establishing reasonable suspicion that some activity out of the ordinary was occurring or had occurred, and that Kerwick had a connection with criminal activity. The State's appeal followed.

---

[1] Findings of Fact and Conclusions of Law at 1–2, No. 1169199 (County Criminal Court No. 10, Tarrant County, Tex. Nov. 29, 2010) (citations omitted).

The court of appeals affirmed the trial judge's ruling.[2] The court found that the State had not satisfied its burden to establish reasonable suspicion because it failed to adduce enough information from Officer Bradford on the record relative to the detention, and this prohibited the court from objectively determining whether reasonable suspicion existed to conduct the stop.[3] Specifically, the court held that "the record before us simply contains no facts to enable either the trial court or this court to objectively evaluate either Officer Bradford's *belief* that the person who said, "There they are right there. There they are, there they are," was the person who called the police or his *belief* that [Kerwick] was 'involved in an offense . . . .'"[4] We granted the State's petition for discretionary review to determine whether the court of appeals properly applied the standard of review applicable to a motion-to-suppress ruling and correctly held that Officer Bradford lacked reasonable suspicion.

## STANDARD OF REVIEW

We review a motion to suppress evidence under a bifurcated standard.[5] The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record.[6] But when

---

[2] *State v. Kerwick*, 353 S.W.3d 911, 913 (Tex. App.—Fort Worth 2011).

[3] *Id*. at 917.

[4] *Id*. (emphasis in original and alterations omitted).

[5] *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[6] *Id*.

mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling *de novo*.[7] Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed *de novo* on appeal.[8]

## REASONABLE SUSPICION

The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion.[9] "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further."[10] Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.[11] These facts must show unusual activity, some

---

[7] *Id.*

[8] *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding that determination of reasonable suspicion should be reviewed *de novo* on appeal, with deference to judges' findings of historical facts); *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012).

[9] *Terry v. Ohio*, 392 U.S. 1, 28 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

[10] *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004).

[11] *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011).

evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime.[12] "Although an officer's reliance on a mere 'hunch' is insufficient to justify an investigatory stop, . . . the likelihood of criminal activity need not rise to the level required for probable cause."[13] The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent.[14] A reasonable-suspicion determination requires looking at the totality of the circumstances and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity.[15]

## ANALYSIS

We first address the court of appeals's evaluation of the record and the trial judge's findings of fact and conclusions of law. When a trial judge rules on a motion to suppress and makes explicit factual findings, an appellate court must determine whether the findings are supported by the record.[16] At the outset, we note that the court of appeals properly

---

[12] *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

[13] *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

[14] *Terry*, 392 U.S. at 21–22; *York*, 342 S.W.3d at 536.

[15] *York*, 342 S.W.3d at 536.

[16] *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *see State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) ("When the trial judge makes explicit findings of fact, we afford those findings almost total deference as long as the record supports them, regardless of whether the motion to suppress was granted or

disregarded portions of the trial judge's findings of fact number four and eleven which respectively found that Officer Bradford "believed" that the person with whom he spoke was the one who called the police and that the occupants of the vehicle were involved in either an assault, criminal mischief, or both. Officer Bradford's subjective beliefs are not relevant to the determination of reasonable suspicion. However, in reviewing the record, the court highlighted what it perceived to be the record's deficiencies and the questions the record and the trial judge's findings of fact left unanswered: (1) what was said between Officer Bradford and the unidentified person; (2) why Officer Bradford believed the individual was the person who made the initial phone call to the police; (3) how much time elapsed between Officer Bradford's arrival at the scene and the call to dispatch; and (4) how the vehicle was damaged or why Officer Bradford believed the damaged vehicle belonged to the individual.[17] By focusing on what the record and the findings did not contain, the court ventured beyond its role in ensuring that the trial judge's findings were supported by the record. Instead, the court's review of the record, as well as its ultimate conclusion concerning its adequacy, centered on what it believed the record and the trial judge's findings should have contained. Based on our review of the record, we hold that the findings of fact that the trial judge entered are supported by the record. Indeed, the findings of fact essentially mirror Officer Bradford's suppression-hearing testimony in its entirety, indicating that the trial judge found

denied.").

[17] *Kerwick*, 353 S.W.3d at 916–17.

Officer Bradford credible.[18]   The court of appeals failed to grant the trial judge's factual findings almost total deference and review *de novo* the trial judge's legal conclusion that Officer Bradford lacked reasonable suspicion based on those factual findings.[19]

Relying on our opinion in *Ford v. State*[20] for support, the court of appeals held that "[n]o facts exist in the record to enable the trial court or this court to assess whether either of [the] beliefs by Officer Bradford [that the person he spoke to was the caller and that Kerwick was involved in an offense] were objectively reasonable."[21]   We disagree.   While the specific, articulable facts introduced through Officer Bradford's testimony were neither ideally inclusive nor entirely descriptive, the facts found by the trial judge were sufficient to evaluate the reasonableness of Kerwick's detention.   The court of appeals's reliance on our opinion in *Ford* is misplaced because the record in *Ford* is clearly distinguishable from the one presented here.   In *Ford*, the record from a motion-to-suppress hearing contained only the detaining officer's conclusory statement concerning the purported reason for the stop—that Ford was following another vehicle too closely in violation of the Transportation Code.[22]   Without more than a conclusory opinion, we held that the record failed to provide

---

[18] *See State v. Sheppard*, 271 S.W.3d 281, 288 (Tex. Crim. App. 2008).

[19] *Id*. at 286–87.

[20] 148 S.W.3d 488 (Tex. Crim. App. 2005).

[21] *Kerwick*, 353 S.W.3d at 917.

[22] *Ford*, 148 S.W.3d at 493.

specific, articulable facts that would enable us to assess the reasonableness of the officer's opinion that Ford was committing an offense.[23] Far from a single conclusory statement, the trial judge's findings of fact listing specific, articulable facts known to Officer Bradford at the time he detained Kerwick—which the court of appeals incorporated in its opinion—demonstrate how dissimilar the *Ford* opinion is to the record before us and how its holding is inapplicable to the case at hand.

We begin our *de novo* review by identifying the relevant historical facts the trial judge found Officer Bradford knew at the time he initiated the investigative detention: (1) shortly after midnight, someone called the police to report several people fighting in front of PR's Bar; (2) upon arrival at PR's Bar, Officer Bradford saw several people standing outside; (3) Officer Bradford spoke to someone who was the owner of a damaged vehicle which was at the location; (4) this person, who identified him or herself to Officer Bradford, pointed at a vehicle parked on the roadway directly across the street from the bar and stated, "There they are right there. There they are, there they are;"and (5) as Officer Bradford approached Kerwick's vehicle, it began to move and he ordered Kerwick to stop.

While each fact in isolation may be insufficient to establish reasonable suspicion, based on the totality of the circumstances, we find that Kerwick's detention was supported by reasonable suspicion. The damage to the vehicle observed by Officer Bradford and the report of several people fighting is indicative that unusual activity occurred and that this

---

[23] *Id.*

unusual activity was some indication that a crime may have occurred.[24] The evidence further supports a reasonable basis to believe that either Kerwick or the car's other occupants may have been connected to this unusual activity. In addition to discounting the other facts known to Officer Bradford, the court of appeals specifically addressed the "there they are" statement and held that it "does not indicate any unusual activity, does not connect [Kerwick] to any usual activity, and does not indicate that any unusual activity is related to crime."[25] However, it did so by evaluating the statement apart from the context and the circumstances under which it was made. A piecemeal or divide-and-conquer approach deprives the statement of additional content gleaned from context and disregards an officer's ability to make rational inferences from the statement and other known facts.[26] In light of the damaged vehicle and the presence of several people outside of the bar after a report of several people fighting, and the clear identification of Kerwick's vehicle, the statement provided a rational basis for Officer Bradford to infer that the person whose vehicle was damaged was a potential crime victim and was identifying the person or persons responsible for the damage. As the court of appeals seems to suggest, it is conceivable that this person who identified the occupants in Kerwick's car could have been pointing them out to Officer Bradford for a reason wholly distinct from any involvement in an assault or criminal

---

[24] *See generally* TEX. PENAL CODE §§ 22.01 (Assault), 28.03 (Criminal Mischief) (West 2008).

[25] *Kerwick*, 353 S.W.3d at 917.

[26] *See Arvizu*, 534 U.S. at 273–74.

mischief, or that the vehicle was actually damaged in an unrelated incident. But Officer Bradford was entitled to interpret these facts with common sense and infer that criminal activity may have recently occurred.[27]

Officer Bradford's belief that Kerwick or a passenger in her car was involved in criminal activity and that he needed to investigate was further supported by Kerwick's attempt to drive away as he approached. It was reasonable for Officer Bradford to infer that Kerwick was evading Officer Bradford either because Kerwick did not want to speak to him or because Kerwick and her passengers had been identified by a witness or potential crime victim at the scene. "[Flight] is not necessarily indicative of wrongdoing, but it is certainly suggestive of such"[28] and may be considered among the totality of the circumstances in a reasonable-suspicion analysis.[29] The Fourth Amendment does not require an officer "to simply shrug his shoulders and allow . . . a criminal to escape. On the contrary, *Terry*

---

[27] *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); *Sokolow*, 490 U.S. at 8 ("The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same—and so are law enforcement officers.").

[28] *Wardlow*, 528 U.S. at 125.

[29] *Id*. at 125–26 (further stating that, "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning."); *Martinez v. State*, 72 S.W.3d 76, 83 (Tex. App.—Amarillo 2002, no pet.); 40 GEORGE E. DIX & JOHN M. SCHMOLESKY, CRIMINAL PRACTICE AND PROCEDURE § 13:64 (3d ed. 2011).

recognizes that it may be the essence of good police work to adopt an intermediate response."[30]  Officer Bradford's investigatory stop was reasonable in order to determine Kerwick's and her passenger's identities and "maintain the status quo momentarily to obtain more information" concerning the possible criminal activity.[31]  When police receive a call about an offense and, on arrival at the scene, someone shouts "There they are," it would be unreasonable for an officer not to investigate further.  Amounting to more than a mere hunch, the specific, articulable facts, and the rational inferences flowing from those facts, warranted Officer Bradford's investigative detention of Kerwick.

## CONCLUSION

Based on the totality of the circumstances, we conclude Officer Bradford was justified in suspecting that Kerwick was involved in criminal activity and detaining Kerwick to investigate further.  We reverse the court of appeals's judgment and remand the case to the trial court for further proceedings consistent with this opinion.


DATE DELIVERED: February 27, 2013

PUBLISH

---

[30] *Adams v. Williams*, 407 U.S 143, 145 (1972).

[31] *See id*. at 146.