**Affirmed and Opinion filed July 30, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00390-CR

## SUSAN H. TERRELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 11
Harris County, Texas
Trial Court Cause No. 1927250**

### O P I N I O N

Appellant Susan H. Terrell appeals her misdemeanor conviction for driving while intoxicated (DWI). After the trial court denied her motion to suppress evidence, appellant pleaded guilty. The trial court then found her guilty and sentenced her to one year in jail, probated for one year, and a $200 fine. In four issues, appellant asserts that the trial court abused its discretion in denying her motion to suppress because she was illegally detained, the detaining officer did not have a reasonable suspicion appellant had committed or was about to commit a

crime, the court did not have sufficient facts before it to support the conclusion that appellant had committed, was committing, or was about to commit a crime at the time of her detention, and the detaining officer had no authority to detain appellant for a traffic violation that the officer did not witness and had no proof occurred within the jurisdictional limits of her police force. We affirm.

## *Background*

During the hearing on appellant's motion to suppress, Richard Bruton testified that on October 31, 2013, he was driving in his pickup truck when appellant bumped the rear of his vehicle with her Lexus as he was pulling up to an intersection. He said that he knew that there was no damage to his truck because they "barely bumped" and his truck had a trailer hitch. Bruton indicated to appellant to "back off," and appellant waved her hand in a manner that indicated she had hit Bruton. Bruton continued on his way, but appellant began to follow him. He first drove to meet his wife; appellant followed him and parked behind him for ten minutes while he waited for his wife. After Bruton's wife came out and got into her own vehicle, Bruton proceeded again and appellant continued following him. Eventually, Bruton decided to call the Tomball Police Department. The police dispatcher instructed Burton to drive to a nearby police station.

Officer Kristina Tikal of the Tomball Police Department also testified at the hearing. She stated that she heard the police dispatcher's side of the conversation with Bruton because she was standing beside the dispatcher during the conversation. A tape recording of the conversation was played at the hearing. During the conversation, the dispatcher can be heard to ask, "[s]he ran into you?" Later in the recording, the dispatcher states, apparently to Tikal, that the caller has an "erratic female" following him, "[s]he bumped his vehicle. She was following

2

him too close."[1]   The dispatcher further explained that the woman had been following the driver through town and was still following him.  Tikal testified that when she went outside to meet the caller in the parking lot, she observed Bruton pull into the parking lot with appellant "immediately after him very close tailgating his vehicle."  As Bruton drove around the horseshoe driveway, appellant followed him and then stopped when he stopped.

Tikal knocked on appellant's window and asked her to roll it down, but appellant shook her head no.  Appellant tried to talk to Tikal through the window, but Tikal could not hear what she was saying and again asked appellant to roll the window down.  Appellant then hit the door unlock button three or four times, locking and unlocking the door.  Tikal explained that it appeared appellant was attempting to roll down the window but could not locate the correct button.  When appellant hit the unlock button again, Tikal "went ahead and opened the door because [appellant] was clearly having an issue."  When the door opened, Tikal smelled alcohol.  When Tikal began to converse with appellant, she noted appellant could not explain her actions, became emotional, and had slurred speech.  Tikal stated that at that point, the focus of her investigation shifted to DWI.

Tikal explained that from hearing the dispatcher's side of the conversation with Bruton, she believed there to have been "some type of disturbance," that appellant "had already hit his vehicle once . . . and was continuing to follow him around town."  Tikal additionally described her experience and training as a police officer.  She further stated that it is a violation of law to follow another vehicle extremely closely, to hit someone's vehicle, and to harass another person.  At the conclusion of the hearing, the trial court denied appellant's motion to suppress.  As

---

[1] Tikal testified that when it was determined Bruton was close to the police station, she began walking toward the parking lot and the dispatcher gave her additional information over the radio.  This exchange was also recorded on the tape of the call.

mentioned above, appellant then pleaded guilty, while preserving her right to appeal the trial court's ruling on the motion to suppress.

### *Governing Law*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The trial court's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id*. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial court's ruling de novo. *Id*. Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of fact and law that is reviewed de novo on appeal. *Id*. When, as in this case, the trial judge does not make formal findings of fact, we uphold the trial court's ruling on any theory of law applicable to the case and presume the court made implicit findings in support of its ruling if those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full custodial arrest must be justified by a reasonable suspicion. *Kerwick*, 393 S.W.3d at 273.[2] "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004). Reasonable suspicion to detain a person exists if an officer has specific, articulable

---

[2] The State concedes for argument purposes that appellant was detained when Tikal opened appellant's vehicle door without her consent. For purposes of our analysis, we assume without deciding that a detention occurred.

facts that, combined with rational inferences from those facts, would lead him or her to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Kerwick*, 393 S.W.3d at 273. These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime, but the likelihood of criminal activity need not rise to the level required for probable cause to arrest. *Id.* at 273-74. The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Id.* at 274. A reasonable-suspicion determination must be based on the totality of the circumstances, and reasonable suspicion may exist even if the circumstances presented are as consistent with innocent activity as with criminal activity. *Id.*

### *Analysis*

In her first three issues, appellant challenges the trial court's determination that her detention was supported by reasonable suspicion. More precisely, appellant questions whether Tikal presented specific, articulable facts that, combined with rational inferences from those facts, led her to reasonably conclude that at the time of the detention, appellant was, had been, or would soon be engaged in criminal activity. In support of her argument, appellant relies heavily on the Court of Criminal Appeals opinion in *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005).

In *Ford*, the detaining officer testified that he pulled the defendant over after observing the defendant following another vehicle "too closely." *Id.* at 491. The officer explained that he believed the defendant had committed the traffic offense of "[f]ollowing too close." *Id.*; *see also* Tex. Transp. Code § 545.062(a)

(prescribing safe following distances for vehicles).[3] The officer did not provide any specific information regarding conditions at the time of the stop beyond the time of day and did not offer any details regarding how closely the defendant was following the other vehicle. The trial court and the court of appeals held that the officer's testimony was sufficient to support a reasonable suspicion justifying an investigative detention. *Ford*, 158 S.W.3d at 491-92. The court of appeals specifically reasoned that the officer's training and experience qualified him to make a judgment regarding whether the defendant was violating the law by following the other vehicle too closely given the conditions present on the roadway. *Id*. The Court of Criminal Appeals reversed, however, holding that the officer's testimony was conclusory and failed to offer specific, articulable facts that a court could use in assessing whether the officer's opinion was objectively reasonable. *Id*. at 493-94. The Court acknowledged that an officer's training and experience may factor into the analysis but stated that relying on those factors without objective factual support was inappropriate. *Id*.

In the present case, Tikal's statement that she observed appellant pull into the parking lot "immediately after [Bruton] very close tailgating his vehicle" is somewhat similar to the officer's statement in *Ford* that the Court of Criminal Appeals found conclusory. Tikal, like the officer in *Ford*, did not provide information regarding speed, distance between the vehicles, or the conditions present on the roadway. Her statement offered only slightly more detail in that she

---

[3] Section 545.062 provides as follows:

> An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

Tex. Transp. Code § 545.062(a).

stated appellant's vehicle was "very close" to Bruton's vehicle as they were pulling into the parking lot. *Cf. Stoker v. State*, 170 S.W.3d 807, 813 (Tex. App.—Tyler 2005, no pet.) (distinguishing *Ford* and holding officer provided specific articulable facts when officer testified that defendant was "traveling at a high rate of speed" and was "right up on another car.").

However, even if Tikal's tailgating statement was insufficient under *Ford*, there was considerably more information presented in this case to support reasonable suspicion than was offered in *Ford*. When Tikal observed appellant tailgating Bruton, she was aware that appellant had already hit Bruton's vehicle with her own and had been following him around town for some time. Tikal testified that she heard the dispatcher's side of the conversation with Bruton, so she would have heard the dispatcher say "[s]he ran into you?" and (apparently to Tikal) "[s]he bumped his vehicle. She was following him too close." Moreover, the dispatcher said that the woman driving the Lexus had been following Bruton through town and was still following him.[4]

At the time of the alleged detention, Tikal therefore had information indicating appellant had hit Bruton's vehicle by following him too closely, a

---

[4] The additional information Bruton supplied the dispatcher, as recorded on the tape of his call, also supports the determination of reasonable suspicion in this case. The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; instead, the cumulative information known to cooperating officers at the time of the stop must be considered in determining whether reasonable suspicion exists. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A police dispatcher is generally regarded as a cooperating officer for purposes of this analysis. *See id*. Moreover, information provided to police by a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable. *Id*. at 914-15. The only question in that scenario is whether the information provided by the citizen—viewed through the prism of the detaining officer's knowledge and experience—objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id*. at 915. In the call, Bruton provided additional details, including that appellant "ran into" him at an intersection, was driving "right on [his] bumper," and was following him around town.

possible violation of Penal Code section 545.062(a).[5]  Moreover, from this information as well as the fact that appellant continued to follow Bruton closely around town—as reported by Bruton and observed by Tikal herself—Tikal had a reasonable suspicion that appellant would eventually strike Bruton's vehicle again. Thus, Tikal was aware of specific, articulable facts that, combined with rational inferences from those facts, led her to reasonably conclude that at the time of the alleged detention, appellant was, had been, or soon would be engaged in criminal activity.  *See Kerwick*, 393 S.W.3d at 273.  In other words, the facts demonstrated a connection between appellant and unusual activity and some indication that the unusual activity was related to crime.  *See id*.  The specific, articulable facts presented therefore justified an investigative detention.  Accordingly, we overrule appellant's first three issues.

In her fourth issue, appellant argues that Tikal lacked authority to detain her for a traffic violation that Tikal neither witnessed nor had proof it occurred within the jurisdictional limits of her police force, the Tomball Police Department.  The legal authority appellant cites in support of her contentions, however, paragraphs (1) and (2) of Texas Code of Criminal Procedure article 14.3g, deal with when a peace officer may arrest a suspect without a warrant outside the officer's jurisdiction.  These provisions have no application to an officer's investigative detention of someone within the officer's jurisdiction.  Appellant cites no other legal authority in support of her argument.  Accordingly, we overrule appellant's

---

[5] Appellant offers scenarios under which colliding with the rear of another vehicle would not necessarily be a violation, such as when the vehicle in front rolls backwards into the vehicle behind and when a third vehicle forces two other vehicles to collide.  These scenarios, however, do not comport with the information relayed to Tikal or the dispatcher at the time of the alleged detention.  The information conveyed was that appellant was following Bruton's vehicle so closely that she hit his vehicle as they were coming to an intersection.  Moreover, reasonable suspicion may exist even under circumstances that are as consistent with innocent activity as with criminal activity.  *See Kerwick*, 393 S.W.3d at 274.

fourth issue. *See* Tex. R. App. P. 38.1(i) (requiring that appellant's brief contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

We affirm the trial court's judgment.

/s/     Martha Hill Jamison
        Justice

Panel consists of Justices Jamison, Busby, and Brown.
Publish — TEX. R. APP. P. 47.2(b).

9