

NUMBER 13-13-00188-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SHANE CHRISTOPHER ALLEN,                                          Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal from the 424th District Court
of Burnet County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant Shane Christopher Allen appeals his conviction for possession of a

controlled substance in penalty group one, weighing an amount of four grams or more

but less than two hundred grams, with an intent to deliver, a first-degree felony. *See*

TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West, Westlaw through 2013 3d

C.S.).   By three issues, which we re-organize as two, Allen asserts that:   (1) the trial court erred by denying his motion to suppress, and (2) the evidence is insufficient to sustain his conviction.   We affirm.

## I.   BACKGROUND[1]

A Burnet County grand jury indicted Allen for possession of methamphetamine, with intent to deliver, in an amount of four grams or more but less than two hundred grams.   *See id.*   Allen pleaded not guilty, and his case was tried to a jury.   The record reveals the following:

As he left work for the day on September 29, 2011, Burnet Police Department Chief Paul Nelson responded to a call of a "disturbance in progress" at 300 Leffingwell Lane in Burnet, Texas.   Chief Nelson testified that the home belonged to Maureen Boyd and that Boyd was having problems with her adult son, John Douglass, who lived on her property.   According to Chief Nelson, Boyd and Douglass "had a history of . . . problems" and Douglass had "drug problems in the past."   Upon arriving at the Boyd residence, Chief Nelson met with Boyd, who was concerned about a "white car" driven by a "white male" that had been on her property prior to the police arriving.   Other officers responded later to the Boyd residence, so Chief Nelson decided to leave.

As Chief Nelson drove off the Boyd property down Leffingwell Lane, he observed a white vehicle driving toward the Boyd residence.[2]   The vehicle did not have a front license plate.   Chief Nelson decided to turn his vehicle around and pull up behind the

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] According to Chief Nelson, Leffingwell Lane is a dirt road that is considered a "public roadway" leading from Highway 29 to the Boyd residence, which is the sole destination on Leffingwell Lane.

white car. At that point, the driver of the white car—later identified as Allen—stopped his vehicle and put the car in reverse. Chief Nelson then turned his "red and blue lights on" and conducted a traffic stop of Allen's vehicle. On cross-examination, Chief Nelson admitted that he discovered a "temporary [license plate] tag" displayed in Allen's rear window, as he approached Allen's car, which would excuse Allen's violation of not displaying his front license plate. However, Chief Nelson reaffirmed that Boyd had described the "white car" for Chief Nelson and told him that if the same person in the white car "showed back up on her property . . . [the police] could come and give him a criminal trespass warning" because she did not want this individual on her property. During the stop, Chief Nelson approached Allen's vehicle, observed an open beer can in the center console, and asked Allen to step out. Chief Nelson asked Allen to identify himself, and a short time later, Captain Jason Davis arrived to assist and relieve Chief Nelson, who had to leave the scene.

Captain Davis testified that he looked into Allen's vehicle and observed an open beer can in the center console. Captain Davis asked Allen whether he had any marijuana in the vehicle, and Allen replied that he did. Captain Davis testified that he felt he had enough probable cause to search Allen's vehicle. In conducting his search, Captain Davis found a black "zippered pouch" bag on the driver's side floorboard which contained "pills[,] . . . several small baggies that contained different amount[s] of [a] white crystal substance[,] . . . . needles, pipes, [and] a digital scale. . . ." Based on his training and experience in policing narcotics, Captain Davis testified that digital scales are used to "weigh out" drugs. Captain Davis also performed a field test of the white crystal substance found in the black bag. The substance tested positive for

3

methamphetamine.   Captain Davis collected the evidence and placed it police custody for further testing by the Texas Department of Public Safety Laboratory.

Jeffery Keverline, a forensic scientist with the Texas Department of Public Safety, testified that he tested several pieces of evidence submitted by the State, including State's Exhibits 6A through 6J.   According to Keverline, the aggregate weight of the substance seized by the Burnet police from Allen was 12.95 grams and testing revealed that the exhibits contained methamphetamine, including "adulterants and dil[u]tants."

Investigator Nolan Hicks of the Burnet County Special Operations Unit testified that he has handled hundreds of narcotics investigations and cases.   According to Investigator Hicks, drugs are typically for personal use when they are found without scales.   Investigator Hicks testified that scales are used by drug dealers to "make [the] most profit" from the narcotics.   Investigator Hicks also stated that generally possession of "a gram or two," of drugs indicates personal use, but possession of "12 to 13 grams of methamphetamine" is not an amount that he would consider for personal use.   Finally, Investigator Hicks testified that the State's evidence collected from Allen's black bag suggests an intent to deliver based upon his possession of plastic bags in varying sizes, the digital scale, and some of the drugs found in Allen's bag appeared to have been "preweighed out and prepackaged for sale."

The jury found Allen guilty as charged in the indictment.   During the punishment phase of trial, the State alleged a 2007 prior felony conviction for possession of a controlled substance with intent to deliver to enhance Allen's penalty as a repeat felony offender.   *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (West, Westlaw through 2013 3d C.S.).   Allen pleaded "not true" to the enhancement allegation, but the jury found the

4

allegation true and sentenced Allen to twenty-five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division.   This appeal followed.

## II.   MOTION TO SUPPRESS

By two issues, which we address as one, Allen asserts that the trial court erred by denying his motion to suppress the evidence seized from his vehicle.

### A.  Standard of Review

We review a motion to suppress evidence under a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc).   Regardless of whether the trial court granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling.   *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013). The trial court's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Kerwick*, 393 S.W.3d at 273.   We review de novo a trial court's application of the law of search and seizure to the facts.   *Wade*, 422 S.W.3d at 666.   When mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review those questions de novo.   *Kerwick*, 393 S.W.3d at 273.   Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed de novo.   *Id.*

### B.  Discussion

Allen first argues that the evidence shows that Chief Nelson did not have the reasonable suspicion necessary to justify his detention of Allen.   We disagree.   There are three distinct types of police-citizen interactions:   (1) consensual encounters that do

5

not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be support by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. *Wade*, 422 S.W.3d at 667. "Reasonable suspicion of criminal activity permits a temporary seizure for questioning that is limited to the reason for the seizure." *Id.* (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82 (1975)). "A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead [the officer] to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is an objective one that disregards the subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Id.* An investigative detention is justified if the totality of the circumstances combine to reasonably suggest the imminence of criminal conduct. *Id.* Thus, the relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts. *Id.* "Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Id.* (internal citations omitted). While an "anonymous tip alone is seldom sufficient to establish reasonable suspicion," *see Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014), information provided to police from a "citizen-informant who identifies

6

[herself] and may be held to account for the accuracy and veracity of her report may be regarded as reliable." *Derichsweiler*, 348 S.W.3d at 914–15. When a citizen informant provides information to police, "the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Id.* at 915.

Here, Chief Nelson responded to a disturbance call at the Boyd residence on Leffingwell Lane. According to Chief Nelson, the Boyd residence is the only destination from Highway 29 down Leffingwell Lane. He recalled that Boyd complained to him about her son's associate, who had been on her property earlier. Boyd described the associate as a "white male" in a "white car" and told Chief Nelson that if he were to come onto her property again, the police had her permission to issue him a criminal trespass warning. Chief Nelson testified that he knew Boyd prior to this call from her work with the City of Burnet. As Chief Nelson drove away from the Boyd property toward Highway 29, he observed a white male driving a white car toward the Boyd residence. Chief Nelson also noted that the vehicle did not display a front license plate as required by statute. *See* TEX. TRANSP. CODE ANN. § 504.943 (West, Westlaw through 2013 3d C.S.) (penalizing the operation of a motor vehicle on a public highway that does not display two license plates).

After viewing this evidence in a light most favorable to the trial court's denial of Allen's motion to suppress, *see Wade*, 422 S.W.3d at 666, we conclude that based on the totality of the circumstances, Chief Nelson held reasonable suspicion to detain Allen because he had specific, articulable facts from Boyd, as a reliable citizen-informant, that

7

a white male in a white car was a trespasser on her property, which was the only destination on Leffingwell Lane, after the disturbance call, as well as Chief Nelson's initial observation that Allen did not display a front license plate on his vehicle as required by law, despite later discovering his temporary license plate tag. When we take these two facts, combined with rational inferences from those facts, Chief Nelson could have reasonably concluded that Allen is, has been, or soon will be engaged in the criminal activity of trespassing. *See Derichsweiler*, 348 S.W.3d at 914. Thus, we conclude that Chief Nelson's initial stop and investigatory detention were lawful and supported by the requisite reasonable suspicion. *See Wade*, 422 S.W.3d at 667.

Allen next argues that even if Chief Nelson's initial investigatory detention was reasonable on the basis that Allen did not display his front license plate, any further detention after Chief Nelson saw the clearly displayed buyer's tag on Allen's rear windshield was "beyond the original purpose and scope of the investigative detention." Again, we disagree.

In deciding whether an investigative stop is "reasonable," the general rule is that the stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Even if Allen is correct that Chief Nelson could not have continued his detention based upon the license plate violation, we have concluded that Chief Nelson's investigative stop had a two-fold purpose: (1) the lack of a front license plate on Allen's vehicle; and (2) the fact that his vehicle matched the description of Boyd's trespasser complaint and was in close proximity to the Boyd residence. Thus, even if the first purpose of the investigatory detention was fulfilled after Chief Nelson saw Allen's temporary license plate tag, the second purpose of Chief

8

Nelson's stop had not been effected without Chief Nelson first making contact with Allen. *See id.*

Accordingly, after viewing the evidence in the light most favorable to the ruling, we conclude that Chief Nelson's further investigatory detention was reasonable, even after he saw the temporary license plate tag on Allen's rear windshield, because his investigation of Allen's destination continued. We overrule Allen's first issue.

### III. SUFFICIENCY CHALLENGE

By his second issue, Allen asserts that the evidence is insufficient to sustain his conviction.

#### A. Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768 (citations omitted).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, Allen was guilty of possession of a controlled substance with intent to deliver if he (1) knowingly (2) possesses (3) with intent to deliver (4) methamphetamines (5) in an amount by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d).

**B. Discussion**

Allen first argues that the evidence is insufficient to show that he knowingly possessed methamphetamines. We disagree.

"Possession" means "actual care, custody, control, or management." *Id.* § 481.002(38) (West, Westlaw through 2013 3d C.S.). The court of criminal appeals has identified several non-exhaustive factors, or "affirmative links," which may circumstantially establish sufficiency of the evidence to prove knowing possession, including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the

10

defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).

In this case, Captain Davis testified that he seized "several small baggies that contained different amount[s] of [a] white crystal substance" from a black bag located on the driver's-side floorboard of Allen's vehicle. Keverline, of the Texas Department of Public Safety, confirmed that the substance tested positive for methamphetamines with an aggregate weight of 12.95 grams. Additionally, Allen admitted to Captain Davis that he possessed marijuana. It is also undisputed that Allen was the sole occupant of the vehicle. Finally, in addition to the drugs, Allen possessed "needles, pipes, [and] a digital scale." After considering these affirmative links, *see id.*, and examining the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Allen knowingly possessed methamphetamines with an aggregate weight of 12.95 grams. *See Winfrey*, 393 S.W.3d at 768.

Alternatively, Allen argues that even if the evidence was legally sufficient to support his conviction for possession, the evidence was insufficient to establish an "intent to deliver." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). Again, we disagree.

11

"Deliver" means to "transfer, actually or constructively, to another a controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8). "Intent can be inferred from the acts, words, and conduct of the accused." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Intent to deliver a controlled substance can be proved by circumstantial evidence, including evidence that an accused possessed the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Some factors we may consider in weighing the sufficiency of the evidence of this element include: (1) the nature of the location at which the accused was arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence or lack thereof of drug paraphernalia (for either use or sale); (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Id.* The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Id.* at 326. Finally, expert testimony from experienced law enforcement officers may be used to establish an accused's intent to deliver. *See Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

As noted previously, in addition to the methamphetamines, other items were seized from Allen's possession including baggies, a digital scale, and other drugs. Captain Davis and Investigator Hicks both testified that digital scales are commonly found in drug dealing and are used to weigh the drugs for distribution. Investigator Hicks, who has handled "hundreds" of narcotics investigations and cases, stated that drugs typically found in weights of one or two grams evidence a personal use, where amounts at "12 to 13 grams" typically indicate an intent to deliver. The

methamphetamines found in Allen's possession weighed 12.95 grams. Finally, according to Investigator Hicks, the evidence seized from Allen's black bag suggested that it was meant for the delivery based upon the small plastic baggies, larger plastic bags, digital scale, and the drugs found in Allen's bag that appeared to have been "preweighed out and prepackaged for sale." Therefore, after viewing the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to establish that Allen had an intent to deliver. *See Moreno*, 195 S.W.3d at 325.

Allen's final issue is overruled.

## IV.  CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
4th day of September, 2014.