In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00267-CR
NO. 09-20-00268-CR
NO. 09-20-00269-CR
_____

CHRISTOPHER MICHAEL CASSITY, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause Nos. CR33790, CR33846, CR33983**

**MEMORANDUM OPINION**

A jury convicted appellant Christopher Michael Cassity as a prior felony offender of one charge of possession of a firearm by a felon and two charges of possession of a controlled substance. The jury assessed punishment at five years of confinement in the possession of a firearm by a felon case, 730 days of confinement in a state jail facility in trial cause number CR33846, and seventeen years of confinement in trial cause number CR33983. In the possession of a firearm case,

1

trial cause number CR33790, Cassity's counsel filed an *Anders* brief. In one issue in trial cause numbers CR33846 and CR33983, Cassity argues that the trial court erred by denying his motion to suppress. For the reasons explained herein, we affirm the trial court's judgments in each case.

TRIAL CAUSE NUMBER CR33790

In trial cause number CR33790, the possession of a firearm by a felon case, Cassity's appellate counsel filed a brief that presents counsel's professional evaluation of the record and concludes the appeal is frivolous. *See Anders v. California*, 386 U.S. 738 (1967); *High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978). On February 8, 2021, we granted an extension of time for Cassity to file a *pro se* brief. We received no response from Cassity.

We reviewed the appellate record, and we agree with counsel's conclusion that no arguable issues support an appeal. Therefore, we find it unnecessary to order appointment of new counsel to re-brief the appeal. *Cf. Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We affirm the trial court's judgment of conviction in cause number CR33790.

TRIAL CAUSE NUMBERS CR33846 AND CR33983

In both drug possession cases, Cassity filed a motion to suppress, in which he contended that the Liberty County Sheriff's Department violated his rights under the Fourth, Fifth, Sixth, and Fourteenth amendments, as well as Article I, section 9 of

2

the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure. Cassity contended that any tangible evidence was seized "without warrant, probable cause[,] or other lawful authority[,]" and he requested suppression of any and all tangible evidence, evidence relating to his arrest, and his written and oral statements to any law enforcement officers. Before trial, the trial judge conducted a hearing on the motions to suppress.

At the hearing on the motions to suppress, Officer Paul Young testified that on January 8, 2018, he arrested Cassity for manufacture and delivery of a controlled substance because he found Cassity in possession of methamphetamines, and he explained that he seized the methamphetamines from Cassity. According to Young, he was leaving the area of an armed robbery when he saw Cassity's vehicle "parked in the middle of the roadway at approximately 11:30 at night." Young testified that Cassity's vehicle was obstructing the roadway, so he decided to investigate. Young explained that he saw the brake lights on Cassity's vehicle. Young activated his overhead lights as he approached Cassity's vehicle, and the video recording system in Young's car began to record. The video recording was entered into evidence as State's exhibit 1.

According to Young, there were two suspects from the armed robbery, and there were two people in Cassity's vehicle. Young identified Cassity as one of the occupants of the vehicle. Young testified that as he approached the vehicle, both

occupants were moving around, and he suspected that they were "possibly hiding illegal contraband[,] be it drugs, guns, things they don't want us to see." Cassity tried to motion Young to go around the vehicle, but Young wanted Cassity to exit the vehicle "[f]or officer safety in case he was involved in that armed robbery." Young explained that Cassity did not want to get out of the vehicle, and Cassity did not have his driver's license. Young further testified that the license plate on Cassity's truck was not valid.

Young testified that he saw a large handle inside the vehicle, and he believed it was "a large Bowie knife tucked beside [Cassity's] leg there by the center console and his seat." According to Young, a temporary vehicle tag was on the front driver's seat rather than displayed on the rear of the vehicle. A photograph of the Bowie knife was entered into evidence. Young also observed ammunition in the door pocket of the driver's side door of Cassity's vehicle. Cassity exited the vehicle as Young instructed, and Young explained that he conducted a pat-down for weapons and detained Cassity for officer safety. Young testified that he had previously been told by a confidential informant that Cassity was involved in the distribution of methamphetamines, but he had not personally dealt with Cassity before January 8, 2018.

Young explained that he eventually handcuffed Cassity "for officer safety and the fact he did not have a driver's license on him." Young also patted down Cassity's

4

passenger, and the passenger told Young "that there was a loaded handgun squeezed between the passenger seat and the center console." Young located the handgun and then searched the rest of the truck "[t]o make sure there were no other weapons inside the vehicle due to Mr. Cassity being a convicted felon." During the search, Young located methamphetamines in an orange prescription bottle on the back floorboard. Young explained that the bottle's lid was missing, so he could see into the bottle, and based upon his training and experience, he believed the contents to be methamphetamine. Young testified that he collected a used syringe, a marijuana crusher, and "a digital scale that had residue on it that appeared to be meth." Additionally, Young recovered a dog food canister that had a false bottom, and when he opened it, he found ammunition. Young explained that he decided to arrest Cassity when narcotics were located, and he searched Cassity's vehicle "[d]ue to him being a convicted felon, and [because] another subject advised there were weapons inside the vehicle." Young testified that he did not charge Cassity with possession of a firearm on that date because the investigation revealed that the weapon belonged to Cassity's passenger.

Officer Paul Lowrey testified that on January 16, 2018, he initiated a stop of a white Chevrolet pickup truck because the vehicle's registration was expired. Lowrey explained that he was looking for the vehicle because he had received a call from Young about a previously arrested individual who had gone to an establishment

5

Young owned "asking for his wife[,]" and Lowrey had been shown a picture of Cassity. Lowrey located the vehicle at a mechanic shop, and he observed that the vehicle's license plate expired in October 2016. According to Lowrey, the vehicle eventually left the mechanic shop and traveled along a public roadway, and Lowrey initiated a traffic stop.

Lowrey testified that before he could put his patrol car into park, Cassity had already exited the driver's side of the vehicle, and Lowrey recognized Cassity from the photograph. Lowrey asked Cassity for a copy of his driver's license and proof of insurance, and he explained that Young had "advised . . . that they were invalid[,]"and he had also been told that Cassity was a convicted felon. According to Lowrey, Cassity commented that his wallet had been previously stolen, and he did not provide a license, so he asked Cassity to put his hands behind his back. Lowrey explained that he intended to arrest Cassity for being unable to produce a driver's license and having an expired vehicle registration. Lowrey testified that when he attempted to handcuff Cassity, he dropped his handcuffs, and Deputy John Mendoza then arrived. After Mendoza arrived, Lowrey "went to the driver's side, looked in through the window; and . . . [saw a] rifle sitting on the passenger side in plain view." Lowrey explained that when he saw the firearm, he believed Cassity was also committing the offense of being a felon in possession of a firearm.

6

Mendoza testified that the video camera system in his car began recording automatically when he activated his emergency lights. Mendoza explained that he assisted Lowrey with arresting Cassity for driving with an invalid license, possession of a controlled substance, and unlawful possession of a firearm by a felon on January 16, 2018. Mendoza explained that Lowrey had stopped Cassity because Cassity's registration was expired. Mendoza testified that he helped Lowrey handcuff Cassity, and Mendoza then searched Cassity's person. Mendoza testified that he found a clear plastic bag containing what he believed to be marijuana on Cassity's person, and from outside Cassity's truck, he could see a rifle, shell casings, and a digital scale inside the truck. Mendoza explained that he then searched Cassity's vehicle, and he found a plastic bag in the console that contained a white crystal substance, which Mendoza suspected was methamphetamine. Mendoza explained that Cassity was alone in the vehicle.

## DENIAL OF THE MOTIONS TO SUPPRESS

In his sole appellate issue in trial cause numbers CR33846 and CR33983, Cassity contends the trial court erred by denying his motion to suppress. Specifically, although Cassity concedes in both cases that the traffic stop was lawful, he argues that the searches of his vehicle after his arrests violated his Fourth Amendment rights. With respect to CR33983, the case involving the drug offense of January 8, 2018, Cassity asserts that Young's search of his vehicle exceeded the scope of a

7

search for weapons because the search lasted over five minutes, and he argues that Young did not testify that he realized the pill bottle contained contraband immediately after seeing it. With respect to CR33846, the case involving the drug offense of January 16, 2018, Cassity contends the search of his vehicle was illegal because Lowrey testified that he had already arrested Cassity for the traffic violation, which Lowrey testified was the purpose of the stop, before Lowrey saw the rifle in Cassity's vehicle.

We review the evidence on a motion to suppress in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that rely on credibility determinations if they are supported by the record. *Kerwick*, 393 S.W.3d at 273; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, we review *de novo* questions of law and mixed questions of law and fact that do not rely on credibility determinations. *Kerwick*, 393 S.W.3d at 273.

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State,* 73 S.W.3d 278,

8

281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

The stopping of a vehicle by law enforcement amounts to a seizure within the meaning of the Fourth Amendment. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *see also Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). A routine traffic stop is analogous to a *Terry* stop, during which "the tolerable duration of police inquiries . . . is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns[.]" *Rodriguez*, 575 U.S. at 354 (internal citations omitted); *see Terry v. Ohio*, 392 U.S. 1, 21-23 (1968). A seizure that is based upon reasonable suspicion or probable cause will generally be reasonable. *Corbin*, 85 S.W.3d at 276.

Reasonable suspicion exists when an officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App.

9

2001). In reviewing reasonable suspicion, we consider the totality of the circumstances. *Id*. If, during a valid detention, a police officer develops reasonable suspicion that the detainee is engaged in criminal activity other than a traffic violation, prolonged detention is justified. *Martinez v. State*, 500 S.W.3d 456, 468 (Tex. App.—Beaumont 2016, pet. ref'd).

If an item is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). If contraband is left in plain view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983); *Walter*, 28 S.W.3d at 541. For the plain view doctrine to apply, law enforcement officials must lawfully be where the object in question can be plainly viewed, the incriminating character of the object must be immediately apparent to the officials, and the official must have the right to access the object. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). The immediacy requirement merely requires a showing of probable cause that the discovered item is incriminating evidence. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). An officer may rely on his training and experience to draw inferences and make deductions concerning the nature of the discovered item. *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). "Police may

search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009) (emphasis added).

With respect to trial cause number CR33983, the trial judge heard Young testify that Cassity did not have his driver's license and the license plate on Cassity's truck was not valid. The trial judge also heard Young testify that while he was speaking with Cassity, he saw a large knife between the center console and Cassity's seat and saw ammunition in the door pocket. The trial judge further heard Young testify that when Cassity exited the vehicle, he patted Cassity down and detained Cassity for officer safety, and Cassity's passenger told Young that there was a loaded handgun in the vehicle. The trial judge also heard Young testify that he then searched Cassity's truck to ensure that no other weapons were inside the vehicle because Cassity is a convicted felon. Young testified that while searching the vehicle, he saw a prescription bottle without a lid, and when he saw the bottle's contents, he believed the bottle contained methamphetamine. The trial judge could reasonably have concluded that the search of Cassity's vehicle did not exceed the scope of a search for weapons, and that during the search for weapons, Young developed reasonable suspicion that Cassity possessed methamphetamine based upon seeing the contents of the open prescription bottle during his search for weapons. *See Rodriguez*, 575

11

U.S. at 354; *Martinez*, 500 S.W.3d at 468. Viewing the evidence in the light most favorable to the trial court's ruling and giving almost total deference to the trial court's findings on questions of historical fact and application-of-law-to-fact questions that turn on evaluation of credibility and demeanor, we conclude that the trial judge did not abuse his discretion in denying Cassity's motion to suppress in trial cause number CR33983. *See Kerwick*, 393 S.W.3d at 273. We overrule Cassity's issue as to trial cause number CR33983.

We now turn to the denial of the motion to suppress in trial cause number CR33846. As discussed above, the trial judge heard Lowrey testify that he initiated a stop of Cassity's pickup truck on January 16, 2018, because the vehicle's registration was expired, and he was specifically searching for Cassity because Cassity had gone to an establishment Young owned and asked to see his wife. The trial judge also heard Lowrey testify that he intended to arrest Cassity for being unable to produce a driver's license and having an expired vehicle registration. The trial judge heard Lowrey testify that he dropped his handcuffs while arresting Cassity, and Mendoza arrived to assist. In addition, the trial judge heard Lowrey testify that when he went to the driver's side window after Mendoza arrived, Lowrey saw a rifle on the passenger side of the car in plain view, so he believed Cassity was also committing the offense of being a felon in possession of a firearm. Mendoza testified that while he was helping Lowrey handcuff Cassity, he searched Cassity's

person and found a clear plastic bag containing what he believed to be marijuana, and he also saw a rifle, shell casings, and a digital scale inside Cassity's vehicle. The trial judge heard Mendoza testify that after finding the marijuana and observing the rifle, shell casings, and scale, he searched the vehicle and found a plastic bag in the console that contained what he believed to be methamphetamine.

The trial judge could reasonably have concluded that Mendoza, who arrived on the scene to assist Lowrey, observed a rifle, shell casings, and a digital scale in Cassity's vehicle in plain view. The trial judge further could reasonably have concluded that when Mendoza searched Cassity's person incident to arrest, he found marijuana, which gave him reasonable suspicion that additional contraband might be in Cassity's vehicle. *See Gant*, 556 U.S. at 351; *Andreas*, 463 U.S. at 771; *Keehn*, 279 S.W.3d at 334. Viewing the evidence in the light most favorable to the trial court's ruling and giving almost total deference to the trial court's findings on questions of historical fact and application-of-law-to-fact questions that turn on evaluation of credibility and demeanor, we conclude that the trial judge did not abuse his discretion in denying Cassity's motion to suppress in trial cause number CR33846. *See Kerwick*, 393 S.W.3d at 273. We overrule Cassity's issue as to trial cause number CR33846. Having overruled Cassity's issue in both cases, we affirm the trial court's judgments of conviction in cause numbers CR33983 and CR33846.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on July 2, 2021
Opinion Delivered September 8, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.