**AFFIRMED and Opinion Filed November 17, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-21-00421-CR
_____

### GEORGE RALPH BEACHEM, Appellant
### V.
### THE STATE OF TEXAS, Appellee

_____

### On Appeal from the 296th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 296-82711-2019

_____

## MEMORANDUM OPINION
Before Justices Nowell, Goldstein,[1] and Smith
Opinion by Justice Smith

A jury convicted appellant George Ralph Beachem of possessing with intent to deliver more than four but less than 200 grams of methamphetamine, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d), and the trial court sentenced appellant to twenty-two years' confinement. In two issues, appellant contends that, during the punishment phase, (1) the trial court erred in denying his motion to suppress evidence of two extraneous felony offenses and (2) defense counsel's failure to

_____

[1] The Honorable Leslie Osborne participated in the submission of this case; however, she did not participate in issuance of this memorandum opinion due to her resignation on October 24, 2022. The Honorable Bonnie Goldstein has substituted for Justice Osborne in this case. *See* TEX. R. APP. P. 41.1 (a), (b)(1). Justice Goldstein has reviewed the briefs and the record before the Court.

object to inadmissible judgments and sentences constituted ineffective assistance of counsel. For the following reasons, we affirm the trial court's judgment.

## Background

On December 2, 2018, appellant left a shaving kit in an Uber. He called the Uber driver and left voice messages describing the kit and where he left it in the car. The driver located the kit and looked at its contents to determine whether she needed to return it to appellant right away or could drop it at an Uber center for pickup. Inside the kit, she saw what she believed were illegal drugs, scales, and various sized bags. The driver contacted the police, who observed that the kit contained what appeared to be methamphetamine, a digital scale, and multiple baggies. An officer, pretending to be the Uber driver, contacted appellant and arranged to meet him. Police arrested appellant after he arrived for the meeting. A forensic chemist later determined the kit contained 28.3 grams of methamphetamine, including adulterants or dilutants.

Appellant was charged with possessing with intent to deliver more than four but less than 200 grams of methamphetamine. Following a trial, a jury found him guilty of the offense.

Appellant opted for the trial court to determine his punishment. The State presented evidence of appellant's criminal history, and appellant presented evidence, including his own testimony, on punishment and mitigation. At issue in this appeal

is punishment evidence related to several of appellant's prior convictions and two extraneous offenses appellant committed while on bond for the instant offense.

The State introduced into evidence certified copies of seven judgments and sentences for prior offenses committed by appellant. Dallas District Attorney's Office Investigator Kenny Newton testified for the State and linked those judgments and sentences to appellant.[2] Newton compared personal identifying information, including appellant's name, birthdate, social security number, offense dates, and cause numbers, in the judgments with the same information in a certified copy of appellant's Criminal History compiled by the Texas Department of Public Safety, which was admitted for record purposes only. From those comparisons, Newton concluded that appellant was the same person previously convicted of the offenses reflected in the seven judgments.

Allen Police Officer Kevin Ozols testified for the State regarding two extraneous offenses that appellant committed while on bond. The night of June 26, 2019, Ozols was patrolling near a Wal-Mart Super Center, which he described as a "higher . . . criminal activity area with . . . different crimes such as theft." He observed a car backed into a space near one of the Wal-Mart parking lot exits. The

---

[2] The judgments reflected convictions for the following offenses: (1) burglary of a habitation (January 19, 2001); (2) possession of marijuana under two ounces (March 1, 2001); (3) burglary of a building (August 6, 2002); (4) failure to identify as a fugitive from justice (August 26, 2002); (5) possession of a controlled substance, penalty group 1, less than one gram (November 19, 2015); (6) possession of marijuana under two ounces (December 9, 2016); and (7) failure to identify as a fugitive from justice (December 9, 2016). Newton also testified that appellant was the person convicted of three additional prior offenses by comparing the fingerprints on certified copies of the judgments for those convictions with fingerprints Newton took from appellant prior to testifying.

car's engine was running and its headlights were on. A sunshade covered the front windshield, which was strange to Ozols because it was almost 11:00 p.m. He approached the driver's side window, and appellant lowered the window. Ozols asked what appellant was doing, and appellant said he was waiting on his girlfriend, who was shopping. Ozols then asked appellant for his name and birthdate, but appellant "had to pause and think" before identifying himself as Juan Castillo. This struck Ozols as "fictitious."

Ozols asked appellant to step out of the car. As appellant exited, Ozols observed a glass pipe and a baggie containing a white, crystal-like substance in the car doorframe. Ozols searched appellant and found marijuana and alprazolam in his pockets. In appellant's vehicle, Ozols found more alprazolam, scales, a marijuana pipe, several small baggies, multiple cell phones, a second methamphetamine pipe, multiple weapons, and multiple license plates. Ozols ran the car's VIN, and it returned as stolen. The white, crystal-like substance found in the doorframe later tested positive for methamphetamine.

**Motion to Suppress**

In his first issue, appellant contends the trial court erroneously denied his motion to suppress evidence related to his June 2019 arrest. He asserts Officer Ozols lacked reasonable suspicion or probable cause to detain him by asking him to step out of the car.

We review a trial court's decision on a motion to suppress for an abuse of discretion. *Martinez v. State,* 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In doing so, we apply a bifurcated standard of review, giving almost total deference to the trial court's determination of historic facts and mixed questions of law and fact that rely upon witness credibility, but reviewing de novo pure questions of law and mixed questions of law and fact that do not require credibility determinations. *Id*. at 923. If, as in this case, a trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the court's ruling, assuming the court made implicit findings supported by the record. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). We may uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

There are three types of interactions between police officers and citizens: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *State v. Castleberry,* 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). An officer may initiate a consensual encounter with a person without any objective justification, and the person is free to terminate the encounter. *Id*. (an officer is free to stop and question a person and, without reasonable suspicion, request the person's identification and information).

An officer may conduct an investigative detention if the detention is justified by reasonable suspicion. *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. 2021); *State*

*v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). "Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Kerwick*, 393 S.W.3d at 274. "The articulable facts need only show 'that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime.'" *Johnson*, 622 S.W.3d at 384 (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011)).

We review de novo "[w]hether the facts known to the officer at the time of the detention amount to reasonable suspicion." *Kerwick*, 393 S.W.3d at 273. An "officer can draw on his own experience and specialized training." *Johnson*, 622 S.W.3d at 385. The test for reasonable suspicion is objective, disregarding the officer's subjective intent. *Kerwick*, 393 S.W.3d at 274. We review the reasonable-suspicion determination by looking at the totality of the circumstances. *Id*.

Here, the trial court heard Ozols's testimony that the Wal-Mart was a higher criminal activity area. Appellant was sitting in a car backed into a parking lot space near a Wal-Mart exit. The car engine and headlights were running and, although it was almost 11:00 p.m., a sunshade covered the windshield. Because he considered that abnormal, Ozols approached the car. When he asked appellant for his name, appellant hesitated and appeared to think for a period before answering "Juan

–6–

Castillo." This indicated to Ozols that appellant was providing false information. Ozols then asked appellant to step out of the car for further questioning.

Appellant made an oral motion to suppress any evidence obtained after appellant was asked to exit the car, arguing Ozols had no legal basis to detain appellant. On further questioning, Ozols testified that he asked appellant to exit the car because it was a safer way to conduct an interview. He did not have reasonable suspicion that "any specific crime" had been committed. According to Ozols, appellant was free to leave. The trial court noted that Ozols had "some articulable reasonable facts," but found that the contact was a consensual encounter and denied the motion to suppress.

Even assuming Ozols detained appellant by asking him to exit the car and the encounter was not consensual, we conclude, considering the totality of the circumstances viewed in the light most favorable to the trial court's ruling, that the detention was supported by reasonable suspicion. Appellant had backed his car, with the engine and headlights running, into a parking space near an exit in a retail area with a high rate of theft. Appellant also covered his windshield, which Ozols considered abnormal and could have reasonably inferred therefrom that appellant was attempting to conceal his activity. Ozols also could have reasonably inferred that appellant was trying to conceal his identity based on appellant's hesitation when providing a name, which turned out to be false.

Viewed individually, these facts would not justify a detention. *See*, *e.g.*, *Holmes v. State*, No. 08-16-00150-CR, 2017 WL 5145022, at *3–6 (Tex. App.—El Paso Oct. 31, 2017, pet. ref'd) (not designated for publication) (explaining that individual facts ("high crime area, evening hours, location of vehicle, generalized impressions of evasive answers)," can be factors, but are insufficient on their own, to support an officer's reasonable suspicion of crime). Viewed collectively, however, they are articulable facts raising a reasonable suspicion that justified Ozols's decision to question appellant further. *See id.*; *see also, e.g.*, *Johnson*, 622 S.W.3d at 384 (car occupants' behavior was unusual and secretive, giving rise to objectively reasonable suspicion that some sort of crime was being committed or contemplated, when car was parked a distance from other cars at park-and-ride associated with criminal activity after midnight when people usually did not loiter in vehicles).

Appellant asserts that his conduct of sitting in a running car in the Wal-Mart parking lot, even using a sunshade at night, was not "out of the ordinary." However, the fact that appellant's conduct could have been just as consistent with innocent, or ordinary, conduct does not preclude a reasonable-suspicion finding. *See Johnson*, 622 S.W.3d at 384–85. "[I]t is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon." *Derichsweiler*, 348 S.W.3d at 917.

Appellant also maintains that Ozols admitted that he had no reasonable suspicion to believe appellant "was committing any crime." Instead, Ozols testified that he did not have reasonable suspicion that appellant was committing "any specific crime." Reasonable suspicion of a specific crime is not necessary to justify an investigative detention. *Id*. at 916–17 (reasonable suspicion requires only articulable facts that "suggest that *something* of an apparently criminal nature is brewing").

Ozols articulated specific facts linking appellant to unusual activity and there was some indication that the activity was criminal in nature. We conclude, based on the totality of the circumstances, that appellant's detention was justified by reasonable suspicion and the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's first issue.

## Ineffective Assistance of Counsel

In his second issue, appellant contends he received ineffective assistance of counsel during the punishment phase of trial because trial counsel failed to object to inadmissible evidence of multiple prior convictions. Specifically, appellant complains of counsel's lack of objection to (1) the State's failure to connect appellant to seven prior judgments and sentences through record evidence and (2) six judgments, which he alleges were invalid under Texas Code of Criminal Procedure Article 42.01.

A criminal defendant has the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires objectively reasonable, but not errorless, representation. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142; *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). For the first prong, an appellant must show that "counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez*, 343 S.W.3d at 142. For the second prong, an appellant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142. A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

There is a "strong presumption" that counsel's performance falls "within the wide range of reasonable professional assistance," and an appellant must overcome

the presumption that the challenged action might be considered "sound trial strategy." *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find counsel's performance deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.*

Appellant first asserts that trial counsel should have objected to seven prior judgments because the State attempted to link appellant to the judgments with Newton's testimony that personal identifying information in the judgments matched the same information in appellant's Criminal History. Because the trial court admitted the Criminal History for record purposes only, appellant asserts Newton was "essentially referenc[ing] to nothing."

If a defendant does not object to the admission of challenged evidence at trial, the defendant cannot prevail on a claim of ineffective assistance without showing it would be error to overrule the objection. *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017). And, even if the defendant shows the evidence is objectionable, "without some explanation as to why counsel acted as he did, we presume that his actions were the product of an overall strategic design." *Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000).

Appellant asserts, and we agree, that exhibits admitted for record purposes only are not evidence to be considered by the factfinder. *Alridge v. State*, 732 S.W.2d 395, 398 (Tex. App.—Dallas 1987, pet. ref'd) and *Jones v. State*, No. 05-03-01372-CR, 2004 WL 1718659, at *4 (Tex. App.—Dallas Aug. 2, 2004, pet. stricken) (not designated for publication). In this case, however, the State did not admit the Criminal History to prove appellant's prior convictions. Instead, the State introduced certified copies of the judgments for those convictions along with Newton's testimony comparing identifying factors in the judgments with those in appellant's Criminal History and concluding that appellant was the person convicted of the offenses reflected in the judgments.

Had trial counsel objected at the time, the State likely would have requested that the Criminal History, which is a certified public document from the Texas Department of Public Safety, be admitted for all purposes. *See* TEX. R. EVID. 902; *see Flowers v. State*, 220 S.W.3d 919, 921–23, 925 (Tex. Crim. App. 2007) (copy of computer printout setting forth defendant's criminal history certified as correct by applicable county or district clerk was admissible as self-authenticating under Rule 902 and sufficient, along with certified copy of defendant's driver license record, to prove defendant was person convicted of prior DWI when the personal descriptors on the two documents matched); *Montiel v. State*, No. 03-19-00405-CR, 2021 WL 2021142, at *10 (Tex. App.—Austin May 21, 2021, no pet.) (mem. op., not designated for publication). Because the criminal history was admissible, we

–12–

conclude that appellant has not shown, as required, that the trial court would have erred in overruling an objection to the judgments and sentences had trial counsel posed one.

Nor does the record contain any explanation as to why counsel did not object.[3] Because trial counsel had no opportunity to explain his actions, we must presume his decision was sound trial strategy. *Tong*, 25 S.W.3d at 714. Indeed, trial counsel may very well have decided not to object in order to keep additional information in the Criminal History out of evidence. Under these circumstances, we certainly cannot conclude that counsel's failure to object was so outrageous that no competent attorney would have done the same.

Appellant next complains of trial counsel's failure to object to six of the judgments offered and admitted into evidence because they did not strictly comply with article 42.01 of the Texas Code of Criminal Procedure and, therefore, were invalid. Article 42.01 defines a judgment and lists certain information that a judgment must reflect.[4] TEX. CODE CRIM. PROC. ANN. art. 42.01, §1. But a judgment strictly complying with article 42.01 is not required to prove the existence of a conviction. *See Flowers*, 220 S.W.3d at 921–24 (no specific document or method

---

[3] Although appellant timely filed a motion for new trial on punishment and amended that motion once, the motion and amended motion are based on different grounds than those asserted on appeal, and appellant did not move forward with the motion and amended motion.

[4] Here, appellant asserts five of the judgments lack the names of counsel for the State and/or defense and the degree of the offense and the sixth judgment lacks the date and degree of the offense. *See* CODE CRIM. PROC. art. 42.01, § 1(2) and (14).

of proof is required to prove a defendant's prior convictions).  Further, failure to satisfy article 42.01's requirements renders a conviction voidable, but not void. *See Jones v. State,* 795 S.W.2d 199, 202 (Tex. Crim. App. 1990) (omitted recitation that "defendant is adjudged guilty" did not render judgment incomplete or invalid). Because the omissions in the judgments did not render them invalid, we cannot conclude that trial counsel was deficient for failing to object to them.  *See Gaston v. State*, 63 S.W.3d 893, 898–99 (Tex. App.—Dallas 2001, no pet.).  And, again, without any explanation from counsel regarding the lack of an objection, appellant cannot rebut the strong presumption that counsel's decision not to object fell within the wide range of reasonable professional assistance.

Having considered the totality of trial court's representation and the circumstances of this case, we conclude that appellant has not satisfied his burden to prove counsel's performance fell below an objective standard of reasonableness under the prevailing norms.  *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142.  Accordingly, we overrule his second issue.

We affirm the trial court's judgment.


/Craig Smith/
_____
CRAIG SMITH
JUSTICE

210421f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

GEORGE RALPH BEACHEM,
Appellant

No. 05-21-00421-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-82711-2019.
Opinion delivered by Justice Smith. Justices Nowell and Goldstein participating.


Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 17th day of November, 2022.