**AFFIRMED as MODIFIED; Opinion Filed June 29, 2023**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-00949-CR**

**MARCUS JAMON MOSS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-53348-V**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Smith

Appellant Marcus Jamon Moss pleaded nolo contendere to unlawful possession of a firearm by a felon, *see* TEX. PENAL CODE ANN. § 46.04(a)(1), (e), and the trial court deferred adjudication of his guilt and placed him on deferred adjudication community supervision for two years. The trial court granted appellant permission to appeal his pretrial motion to suppress evidence and, in a single issue, appellant contends the trial court erred in denying the motion. In a cross-issue, the State requests that we modify the trial court's order of deferred adjudication to reflect

that appellant pleaded nolo contendere. We modify the trial court's order and, as modified, affirm.

## Background

Appellant moved to suppress evidence seized by Dallas Police Department (DPD) officers during a search of his vehicle following a traffic stop. Appellant alleged that he and his vehicle were profiled in the traffic stop and the officers exceeded the scope of the stop. The trial court held a hearing on appellant's motion, and DPD Officers Tevin Richard and Marcell Ford testified. Other evidence before the trial court included the incident detail report and footage recorded by a dash-cam in Officer Richard's squad car and a body-cam worn by DPD Officer Joshua See.

The evening of March 19, 2021, Officer Richard was on patrol in South Dallas. He was doing "proactive work" as part of a "search team" charged with removing illegal narcotics and guns from the street. Other officers on the search team were watching a known drug location. They relayed information, including to Officer Richard, that a black Mercedes Benz (the vehicle) had stopped at the location and left. Officer Richard then observed the vehicle at an intersection. He testified that the vehicle did not properly signal when it executed a right turn. Dash-cam footage of the incident showed a red rear light on the vehicle pulsed initially, but the pulsing stopped for a few seconds before the vehicle turned. The light on the vehicle's side view mirror also was not lit.

Officer Richard initiated a traffic stop, ran the vehicle's license plate on the computer in his squad car, and called for the K9 unit. The driver and owner of the vehicle, later identified as appellant, pulled over without incident. Officer Richard approached the vehicle and observed two men in the front seat and a backpack in the back seat.

Officer Richard asked both men for identification and checked for outstanding warrants. The passenger, Maurice Hunter, had an outstanding warrant. According to Officer Richard, this changed the nature of the interaction. For safety purposes, he needed to remove both men from the vehicle. Consistent with his training, he called for backup to assist in Hunter's arrest.

Appellant had no outstanding warrants, but Officer Richard's computer search indicated that appellant had been convicted of a felony. Evidence at the suppression hearing showed that the felony had been reduced to a misdemeanor prior to the traffic stop.

Officers See and Figueroa Luna arrived at the scene a few minutes later (approximately thirteen minutes after Officer Richard initiated the traffic stop). Officers See and Luna approached the front passenger side of the vehicle to arrest Hunter, and Officer Richard approached the driver's side to remove appellant. As Hunter exited the vehicle, Officer Richard observed a firearm slide to the front passenger floorboard. Officer Richard thought the firearm had been "wedged" to

–3–

Hunter's right side. Although he did not know who the firearm belonged to at the time, Officer Richard observed that appellant could have reached over and grabbed it from his position in the vehicle. Officers Richard then removed appellant from the vehicle with Officer See's assistance. Officer Richard told appellant that he was being detained, but determined that appellant was under arrest based on the presence of the firearm in appellant's vehicle and the information that appellant was a felon. The officers discussed searching the vehicle, but Officer Richard decided to wait for the K9 unit to arrive.

The K9 unit arrived approximately seven minutes later (a little more than twenty-four minutes after the initial detention). The K9 unit consisted of a specially-trained German Shepherd named Rony and Officer Ford, Rony's handler. They performed an open-air search of the vehicle, and Rony signaled to Officer Ford indicating the presence of narcotics in the vehicle. The officers searched the vehicle, including the backpack in the back seat. They found narcotics, a handgun, and some of appellant's mail in the backpack.

Hunter was charged with possessing the firearm located in the passenger floorboard. Appellant was charged with possessing the firearm located in the backpack.

At the close of the hearing, the trial court took appellant's motion to suppress under advisement.  It subsequently denied the motion and entered findings of fact and conclusions of law in support of its decision.

## Motion to Suppress

In his sole issue, appellant contends the trial court erred in denying his motion to suppress.  Specifically, he argues that the initial traffic stop was unjustified and his continued detention was unconstitutionally excessive.

### A.  Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard.  *State v. Hardin*, 664 S.W.3d 867, 871–72 (Tex. Crim. App. 2022).  We give almost total deference to the court's findings of historical facts and credibility when they are supported by the record.  *Id*.  We also give almost total deference to the court's rulings on mixed questions of law and fact that turn on an evaluation of credibility and demeanor.  *Id*.  When, as in this case, the trial court makes explicit fact findings, we view the evidence in the light most favorable to the court's ruling to determine if the evidence supports the findings.  *Id*.

We review the trial court's legal conclusions, including whether the facts give rise to reasonable suspicion or probable cause, de novo.  *Id*. at 872; *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017).  We may uphold a trial court's ruling if

it is supported by the record and correct under any theory of law applicable to the case. *Najar v. State*, 618 S.W.3d 366, 373 (Tex. Crim. App. 2021).

### B. Applicable Law

A warrantless traffic stop must be justified by reasonable suspicion. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Hardin*, 664 S.W.3d at 872; *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Evidence that is seized by police in violation of the Fourth Amendment[1] is subject to the exclusionary rule codified in article 38.23(a) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

"Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The test for reasonable suspicion is objective, disregarding the officer's subjective intent. *Id*. at 274.

"A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to

---

[1] Appellant asserts that the vehicle search violated both the Fourth Amendment and Article 1, Section 9 of the Texas Constitution. Because the Texas Constitution affords the same protection against unreasonable searches and seizures as the Fourth Amendment, *see Johnson v. State*, 912 S.W.2d 227, 233–34 (Tex. Crim. App. 1995), we do not address them separately.

complete the tasks associated with the traffic stop," including attending to any related safety concerns. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). An officer may request certain information, including a driver's license, from a driver and passengers during a traffic stop. *Lerma*, 543 S.W.3d at 190. A traffic stop investigation generally is resolved after the officer learns that the driver has a valid license, no outstanding warrants, and the car is not stolen. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004). Unless there is another proper basis for an investigatory detention, the traffic stop must end and the driver must be allowed to leave. *See Rodriguez*, 575 U.S. at 355. To support further detention, there must be reasonable suspicion regarding a different offense. *See Lerma*, 543 S.W.3d at 191.

Determining whether an investigative detention is reasonable is a two-pronged inquiry, focusing first on whether the officer's action was justified at its inception and then on whether the action was "reasonably related, in scope, to the circumstances that justified the stop in the first place." *Kothe*, 152 S.W.3d at 63 (citing *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). This is a factual determination made by considering the totality of the circumstances existing throughout the detention. *State v. Taylor*, No. 05-15-01542-CR, 2016 WL 6135521, at *4 (Tex. App.—Dallas Oct. 21, 2016, pet. ref'd) (mem. op., not designated for publication). Brevity is an "important factor in determining whether the seizure is so minimally

intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696, 709 (1983). At issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly . . . ." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

A trained K9 unit's sniff of the exterior of a vehicle during a lawful traffic stop is not a search within the meaning of the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *Branch v. State*, 335 S.W.3d 893, 900 (Tex. App.—Austin 2011, pet. ref'd). When a K9 alerts on a vehicle, officers have probable cause to search the car without a warrant. *See Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006); *Branch*, 335 S.W.3d at 901. However, an officer may not prolong a traffic stop to conduct a K9 sniff absent facts showing reasonable suspicion that a different offense has been, is being, or soon will be committed. *Rodriguez*, 575 U.S. at 357; *Taylor*, 2016 WL 6135521, at *4.

If an occupant of a vehicle is lawfully arrested, the Fourth Amendment may permit a warrantless search of the vehicle's passenger compartment. *See State v. Sanchez*, 538 S.W.3d 545, 548 (Tex. Crim. App. 2017) (citing *New York v. Belton*, 453 U.S. 454, 455, 463 (1981)). Search of a vehicle incident to arrest, however, is limited to two situations: (1) when the arrestee is unsecured and the area of the vehicle is within his immediate control; or (2) "when it is reasonable to believe that

evidence of the offense of arrest might be found in the vehicle." *Id*. (citing *Arizona v. Gant*, 556 U.S. 332, 335 (2009)).

### C. Initial Traffic Stop

Appellant characterizes the initial traffic stop as "an excuse or pretext to stop the vehicle pursuant to the call from the [search] team." Contending that the evidence arguably showed that the turn signal was operated before the vehicle turned, appellant challenges the evidence supporting the trial court's findings of fact nine and ten:

9. Officer Richard had a clear view of the intersection and observed that the [vehicle] did not properly use the turn signal while executing a right-hand turn; and

10. Officer Richard's dash cam recorded the traffic violation; the footage was introduced as State's Exhibit 2. The footage revealed no observable turn signal while the [vehicle] executed the right-hand turn between the 16 to 21 second mark of the dash cam video.

The Texas Transportation Code requires "[a]n operator intending to turn a vehicle right or left" to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b). Here, the dash-cam video showed a pulsing red rear light on the vehicle before it executed the right turn, but the light went dark for several seconds just before the vehicle turned. Officer Richard testified that he had a clear view of the vehicle and observed that it did not properly signal the turn.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that it supports findings of fact nine and ten and the trial court's determination that the traffic stop was justified at its inception. That Officer Richard also may have had an ulterior motive for the stop based on the search team's information about the vehicle does not offend the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

## D. Extended Detention and Search

Appellant next contends that the subsequent detention and search improperly exceeded the scope of the traffic stop. In doing so, he challenges, all or in part, the following conclusions of law:[2]

42. . . . Officer Richard was constitutionally entitled to detain both occupants and search the vehicle for contraband;

43. The Police . . . had probable cause to arrest [appellant] for unlawfully carrying the weapon in the floorboard;

44. . . . at least two reasonable and diligent means the officers could have used to confirm or dispel their suspicion that there could be additional contraband in the car, both of which justified the continued detention of [appellant] and [the vehicle], [were]: (1) a search of the [vehicle] incident to the arrest of one or both of the occupants and (2) the use of an open-air sniff by a trained K9;[3]

---

[2] The trial court's Findings of Fact, Conclusions of Law Denying Defendant's Motion to Suppress included numbers fifty-two through fifty-six under the heading "Responses to the Defense's Arguments". For purposes of this appeal, we consider them as findings of fact and/or conclusions of law.

[3] Appellant also asserts that the evidence does not support the trial court's partial finding in finding of fact twenty-four and conclusion of law forty-seven that "the K9 Unit is well-trained." We disagree. The trial court heard Officer Ford's testimony that a certified breeder and trainer imprinted Rony with the

46.     Officer Richard arrested [appellant] for unlawfully possessing a firearm, not for a traffic violation. Thus, *Gant* allow[ed] officers to search the vehicle incident to arrest when it is reasonable to believe evidence relevant to the crime of the arrest – here, the weapons charge – might be found therein;

49.     . . . The stop was not unreasonably 'prolonged' . . . ;

52.     Officer Richard had articulable facts [for appellant's continued detention until the K9 performed the dog sniff];

54.     . . . The 'mission' of the traffic stop . . . was not 'otherwise-completed.' The 'mission was ongoing and evolving . . . As such, *Rodriguez*, *St. George*, and *Davis* allowed for the continued investigative detention of [appellant] while officers completed their evolving mission; and

56.     . . . [T]he Court finds it reasonable for [Officer Richard] to suspect [appellant] 'carried' a handgun on the floorboard because it was within his reach and in plain view in the car he owned.

Officers may not prolong a traffic stop beyond the time reasonably required to accomplish its purpose in order to give a K9 unit time to arrive at the scene. *State v. Weaver*, 349 S.W.3d 521, 529 (Tex. Crim. App. 2011). Instead, officers initiating a dog sniff must have the right to be where they are at the time they initiate the sniff. *Id*. (citing *Branch*, 335 S.W.3d at 901).

---

training requested by DPD. She and Rony then trained together for six months. Since then, they have maintained their training in the field and have been tested annually. Rony has always performed perfectly and maintains certification by the National Narcotic Detector Dog Association. There was no evidence to indicate that the K9 unit was not well-trained. Accordingly, we conclude that the evidence supports the trial court's finding otherwise.

After appellant pulled over, Officer Richard properly obtained appellant's and Hunter's identification and checked for outstanding warrants. *See Lerma*, 543 S.W.3d at 190. Because Hunter had an outstanding warrant, Officer Richard reasonably determined, consistent with his training and for safety purposes, to obtain backup to assist with removing Hunter and appellant from the vehicle and with Hunter's arrest. *See Haas v. State*, 172 S.W.3d 42, 54 n. 8 (Tex. App.—Waco 2005, pet. ref'd) (considering safety concerns, twenty-minute wait for backup to arrive before officer conducted K9 sniff of vehicle was not unreasonable); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 109-11 (1977) (officer may ask driver to step out of car to ensure officer safety). Officer Richard testified that he was waiting to make a determination on whether to issue a citation to appellant until the investigation as to both Hunter and appellant was complete.

As Hunter exited the vehicle, Officer Richard observed, in plain view, a firearm on the front passenger floorboard within appellant's reach. Having learned that appellant was a felon, Officer Richard determined that appellant was involved in criminal activity unrelated to the original traffic stop. Based on the totality of the circumstances and crediting Officer Richard's testimony as the trial court did, we conclude that his reasonable suspicion of criminal activity justified extending the investigatory detention beyond the purpose of the initial traffic stop. *See Lerma*, 543 S.W.3d at 191; *Haas*, 172 S.W.3d at 52–53.

Officer Richard further determined that he had probable cause to arrest appellant. Appellant challenges that determination because he "could not possibly reach for the gun," Hunter was ultimately charged with possessing the gun, and appellant did not actually have a felony conviction. We disagree.

"To establish probable cause to arrest, the evidence must show that at that moment [of the arrest] the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *See Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006) (internal citation and quotation marks omitted). In concluding that Officer Richard had probable cause to arrest appellant, the trial court considered the non-exclusive affirmative links evidence that may establish the knowing "possession" or "control, management, or care" of items such as contraband. *See e.g.*, *Evans v. State*, 202 S.W.3d 158, 162 ns.9 & 12 (Tex. Crim. App. 2006). Although appellant asserts otherwise, the evidence shows that appellant could have reached the firearm from his position in the vehicle. Based on appellant's presence, proximity and accessibility to the firearm and the fact that appellant owned the vehicle, an enclosed space, where the firearm was found, the trial court correctly concluded that it was reasonable for Officer Richard to believe that appellant "carried" the firearm.

The trial court also was free to find that Officer Richard's mistaken reliance on information indicating appellant had a prior felony conviction was reasonable in the midst of the ongoing traffic stop. Although that felony had been reduced to a misdemeanor, appellant's criminal history showed a conviction in Cause Number F18-57079-Q. In Dallas County, cause numbers beginning with an "F" indicate a felony case. We conclude, like the trial court, that Officer Richard's mistaken belief that appellant was a felon was reasonable under the circumstances. *See, e.g.*, *Ramon v. State*, No. 13-15-00146-CR, 2016 WL 3364979, at *5 (Tex. App.—Corpus Christi-Edinburg June 16, 2016, no pet.) (mem. op., not designated for publication) (officer's continued investigation and arrest of defendant based on mistaken, but reasonable, conclusion that defendant was a convicted felon was justified). Based on the record, we conclude the trial court correctly determined that Officer Richard had probable cause to arrest appellant.

As outlined in conclusion of law forty-eight, which appellant has not challenged, the officers performed several tasks related to appellant's arrest during the seven minutes that elapsed between the arrest and the K9 unit's arrival: appellant and Hunter were placed in squad cars; Officer Richard retrieved and put on blue gloves and retrieved the firearm; Officer Luna called in the firearm's serial number to determine whether it was stolen; and the officers discussed the status of appellant's criminal history. The officers also conducted a pat-down search of

–14–

appellant, collected items from his pockets, and discussed searching the car because appellant was under full custodial arrest. Our review of the body-cam footage supports the trial court's finding that the traffic stop was ongoing, rather than unreasonably prolonged, and the officers had the right to be where they were when the K9 unit arrived.

Viewing the record in the light most favorable to the trial court's ruling, and considering the totality of the circumstances throughout the detention, we conclude the evidence supports the trial court's conclusions of law, and the findings of fact in support, that there existed a reasonable basis for the traffic stop, the detention was not unconstitutionally prolonged, and appellant's constitutional rights were not violated. Having concluded that the investigatory detention was not unduly prolonged to wait for the K9 unit's arrival, we need not address whether the officers also were authorized to search the vehicle incident to arrest. *See Najar*, 618 S.W.3d at 373 (we may uphold the trial court's ruling if it is supported by the record and correct under any theory of applicable law); *see also* TEX. R. APP. P. 47.1 (we must hand down an opinion as brief as practicable to address the issues). We overrule appellant's sole issue.

### State's Cross-Issue

In a single cross-issue, the State requests that we modify the trial court's order of deferred adjudication to reflect that appellant pleaded nolo contendere. The

record shows that appellant pleaded nolo contendere to unlawful possession of a firearm by a felon. However, the order of deferred adjudication states that he entered a plea of "guilty."

We may modify an incorrect judgment to make the record speak the truth when it contains the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We agree that the trial court's order should be modified to state the correct plea to the offense. Accordingly, we sustain the State's cross-issue and modify the trial court's order of deferred adjudication as follows: (1) the term "Guilty" is deleted and replaced by "Nolo contendere" following the portion of the order that reads "Defendant waived the right to trial by jury and entered the plea below:".

## Conclusion

The trial court's order of deferred adjudication, as modified, is affirmed.

/Craig Smith/
_____
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220949F.U05

–16–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MARCUS JAMON MOSS, Appellant

No. 05-22-00949-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F21-53348-V.
Opinion delivered by Justice Smith.
Justices Molberg and Carlyle participating.

Based on the Court's opinion of this date, the trial court's Order of Deferred Adjudication is **MODIFIED** as follows:

The term "Guilty" is deleted and replaced by "Nolo contendere" following the portion of the order that reads "Defendant waived the right to trial by jury and entered the plea below:".

The trial court's Order of Deferred Adjudication, as **MODIFIED**, is **AFFIRMED**.

Judgment entered this 29th day of June, 2023.